EDWARD H. VAN INGEN, Respondent, v. NATHANIEL WHIT-
MAN, impleaded, etc., Appellant.

The requirements of the statute in reference to the formation of limited
partnerships (1 R. S., 764, § 2), that the contribution of the special
partner to the common stock shall be "in actual cash payments," is not
complied with by a contribution in credits, or in any other thing except
"cash," however convertible at the time into money.
To bring the special partner within the provision of the statute (§ 8),
making all liable as general partners in case of any false statement in
the affidavit required to be made and filed (§ 7), it is not necessary that
the statement be intentionally false. The object of the statute is to give
reasonable security to those likely to deal with the copartnership, and
this is thwarted by an unintentional as well as by an intentional
untruth.
*Ward* v. *Newell* (42 Barb., 482) and *The Madison Co. Bank* v. *Gould* (5
Hill, 309) distinguished.
In an action where a special partner is sought to be held liable under this
provision of the statute, the affidavit and other papers required by the
statute, are presumptive evidence of the formation of a limited part-
nership; but after evidence has been given tending to falsify the affida-
vit, it cannot operate as rebutting proof.

(Argued June 22, 1875; decided September 21, 1875.)

APPEAL from judgment of the General Term of the Court
of Common Pleas for the city and county of New York,
affirming a judgment in favor of plaintiff entered upon the
report of a referee.

This action was brought against defendants as copartners
in the firm of George W. White & Co., to recover for goods
sold to that firm. The defendant Whitman answered, setting
up that the partnership was a limited one, and he a special
partner, and so not liable beyond the sum contributed by him
to the common stock.

The referee found, in substance, as follows:

That for some time previous to the 1st of February, 1869,
said defendant Whitman was a member of the firm of White,
Whitman & Co., doing business in the city of New York,

and was a special partner therein. That such firm was dissolved on the said 1st day of February, 1869; at which time it was perfectly solvent, and the said defendant had a balance in his favor of over $37,000. That on or about such 1st day of February, 1869, an agreement for the formation of a limited partnership, under the name or style of George W. White & Co., was entered into. That the said George W. White, George B. Overton and Albert E. Colfax were to be general partners, and the said Whitman a special partner of such firm, and, as such, was to contribute a capital of $30,000. That an affidavit of said George W. White was sworn to and filed on the 1st day of March, 1869, setting forth that such sum of $30,000 had been contributed in cash, and thereupon the certificate prescribed by law, dated on that day, was then acknowledged and recorded. That such capital of $30,000 was not, either on the first of February or the first of March, or at any intermediate time, contributed in cash by said defendant Whitman, but that so much of the amount due him from the former firm of White, Whitman & Co. was credited to him by the new firm, and was considered as cash by the members thereof. And, as a conclusion of law, that said Whitman became liable as a general partner for the engagements of such firm of George W. White & Co.

*Samuel Hand* for the appellant. The burden was upon plaintiff to show that the certificate as to appellant's contribution was false and that he did not pay in $30,000 cash. (1 R. S., 765, §§ 8, 10; *Mad. Bk.* v. *Gould*, 5 Hill, 309; *People* v. *Pease*, 27 N. Y., 45.) Whitman's contribution, even if made by way of his interest in the firm of White, Whitman & Co., was a compliance with the statute. (1 R. S., 765, § 8; *Foot* v. *Etna Ins. Co.*, Com. Apps., Sept., 1874; *Brown* v. *Argall*, 24 Wend., 296.) The referee erred in admitting in evidence the answer of the witness White "that the capital was considered as all cash." (*Nichols* v. *Kingdom Co.*, 56 N. Y., 618; *Cowdrey* v. *Coit*, 44 id., 382.)

*Rufus B. Cowing* for the respondent. In order to form a special partnership the capital of the special partner must be paid in in cash. (*Haviland* v. *Chace*, 39 Barb., 283.)

FOLGER, J. The appellant intended to be no more than a special partner, and to contribute but $30,000 to the capital of a limited partnership. He believed that he had put into the possession of the new firm, property of that value. But it was not seriously contended at the trial and cannot be here, that he made payment of that sum to that firm, either by a personal handing over of that amount in money, or by giving his check therefor, or in any other way putting it by his personal act in possession of so much cash. The result of the testimony is, that he was entitled from the assets of the former firm, to an amount of more than $30,000; that he contributed to the new firm so much of his interest in those assets as would produce that sum; and authorized White, a general partner in both firms, to convert the same into cash, and to pay the cash into the new firm. The question of fact then is: Was that interest to that amount, turned into cash which went into the capital of the new firm? If it was so done, at any time before the 1st day of March, 1869, or on that day, then the statute was complied with, and Whitman was a special partner only. For, though the partnership had some form and consistency before that day, it was not until that day, and it was on that day, that the parties to it fixed and determined their subsequent legal relations to each other, and to persons who, like the plaintiff, became after that day creditors of it. (1 R. S., p. 764, §§ 4 to 8, inclusive.)

It is plain that Whitman never had personal knowledge of the conversion into cash of that interest in those assets; the utmost that he says is, that White promised to make the conversion and to pay over to the firm, and that White told him that he had done so. There is no other testimony in the case, directly to the point of a conversion into cash, and averring such to be the fact. And though this testimony of unsworn declarations was not objected to, it is weak, unsatis-

factory and unreliable. When White is upon the witness-stand he does not so testify. His testimony and the inferences from it are to the contrary. Thus; he says that there is no entry in the cash-book of the firm, during the month of February, March and April, 1869, of cash contributed to the capital from or by Whitman; and that he knows of no entry showing any cash contributed thereto by Whitman; and that there is no error in the book to his knowledge. Should it be said just here, that he does not say, that the book does not show cash from the conversion of those assets in whole or in part, the query is pertinent, why did he not say that it did, if so it did show, and why was not the question asked him by counsel for Whitman, or the cash-book offered to refresh his recollection if it contained such entry? White is also unable to tell whether the new firm began its business with a cash capital of any amount, ranging from $30,000 to $7,500. Colfax, another member of the partnership, is unable to testify that Whitman ever made his contribution to the capital in actual cash. These are all the witnesses. There is nothing, then, in the testimony, to show a conversion of these assets into cash, save the unsworn statement of White to Whitman, as testified to by the latter; unless, indeed, the affidavit is evidence to that point, which was made by White as one of the papers for instituting the contemplated limited partnership, and which was produced with the other papers to show the institution thereof. (1 R. S., p. 765, § 7.) And here arises the question whether that affidavit can be treated as opposing evidence, upon the issue of the non-conversion of these assets into cash. It was properly received to show that the formal requirements of the statute had been complied with; it was a material fact to that end. It and the papers accompanying it would, without any thing else, have made a presumptive case that the partnership was a limited one. But as soon as evidence had been given tending to overthrow or falsify it, it could not operate as rebutting proof, nor make the affiant in it a witness through it upon the issue. (*The Madison Co. Bank* v. *Gould*, 5 Hill,

309; *Howard* v. *City Fire Ins. Co.*, 4 Denio, 502.) More especially must this be so, when the affiant has been called on the trial as a witness and has given his oral testimony to the matter. That there was testimony given tending to overthrow the affidavit we must admit. White had been asked what was the capital of the firm, and had said that it was $65,000. He was then asked how much of it was cash, and had replied that it was considered as all cash. Though the suggestion of the learned counsel for the appellant is apt, that to say it was considered all as cash, is not to say that none of it was, in fact, cash, or that there was not $30,000 of it cash; yet there is that in the answer of the witness tending to show that there was not as much as $30,000 of it cash, and that the assets from the former firm were considered as cash, though unconverted into money, when it is borne in mind; that the answer is from the financial head of the new firm, who would not say that its cash on hand at the commencement was as much as $7,500 even; that it was also in evidence from him that there was no entry in the cash-book of any cash contribution from Whitman; that he testified that $30,000 of Whitman's interest in the former firm was to go into the new firm as capital, and does not add that it was first to be converted into cash, or that it was in fact so done. It is significant too that the books of the firm were open to Whitman, including the cash-book, and that he did in fact look at it; and that he gives no testimony of, nor calls attention to any entry there, indicative of a conversion into money of these assets and a payment of it into the funds of the firm, as his stipulated contribution to its capital; and it is of much weight that, though all the witnesses were members of this partnership, no one of them is able to say, of his own knowledge, or from any recollection of entry in the books, that there was a receipt by the partnership of the stipulated sum in cash from Whitman, or from the property which he contributed. The fact is established that all which he did personally, was to turn over in the beginning, to the new firm, only an interest in the assets of the old firm. This

was not a payment in cash. To make that act of his a payment in cash it surely needed thus much, that that interest should be turned into money, and that that money go at once into the funds of the partnership. There is not evidence that this was ever done, save the declaration of White to Whitman. The other facts of the case and the facts clearly deducible from them show that this declaration, if not false, was mistaken.

There was that in the testimony, then, which upholds the finding of fact that the capital of $30,000 was not, either on the first day of February or on the first day of March, or at any intermediate time, contributed, in cash, by the defendant Whitman, but that so much of the amount due him from the former firm of White, Whitman & Co. was credited to him by the new firm of Geo. W. White & Co., and was considered as cash by the members thereof.

Upon the findings of fact, of which this is the chief, arises the question of law, whether the defendant Whitman may be charged as a general partner in the firm of George W. White & Co. He may be, if the statement in the affidavit which was made to institute the limited partnership, is false in its averment, that the sum specified in the certificate as contributed by him was actually and in good faith paid in, in cash. (1 R. S., 765, § 8.) The findings of fact establish that this averment is not true. But it is contended that the statute by the use of the word *false* meant more than merely untrue, and meant intentionally and substantially untrue. We are at once put upon the inquiry of what is meant by the phrase intentionally untrue. White, the general partner, intended to assert in the affidavit made by him that the $30,000 contribution of Whitman was made in cash. It was untrue so to assert. Why is it not then an intentional untruth? Because, says counsel, he conceived that that which was equivalent to cash, was cash in the purview of the statute; and the interest of Whitman in the assets of the former firm, they being convertible into cash, was, in his estimation, equivalent to cash. But he intended to state in that affidavit all that he did state,

and just as he stated it. He did state that the payment was made in cash, when it was not. It was not true. Did he not then state an untruth intentionally? If it be meant by intentionally, with a wicked intent, and with a purpose to deceive and defraud, it may be conceded, and should be conceded, that the case shows naught of those. But that is not what the statute demands. It asks for a contribution in cash, and if the contribution is made in aught else than cash, it is not satisfied. It asks for an affidavit that the contribution has been made in cash; and it pronounces false, a statement that it has been made in cash when it has not; and it affixes a penalty upon the intended special partner if such a false statement is made. I have looked at the opinion, in manuscript, in *Foot* v. *Ætna Life Insurance Company** (in Commission of Appeals, September, 1874), cited by the appellant. It does not sustain his proposition, nor does *Bowen* v. *Argall* (*infra*), also cited by him. Doubtless, it is a substantial compliance with the statute which is required, and defects of form may be overlooked and disregarded. (*Bowen* v. *Argall*, 24 Wend., 496; *Smith* v. *Argall*, 6 Hill, 479.) Still, the statute is rigorous in its terms. The amount contributed by the special partner is an essential part of the terms of the partnership. (Id.) The mode of contribution is just as explicitly fixed as that there shall be a contribution; and it is just as explicitly required that the mode of contribution prescribed by the statute shall be followed, and shall be averred in the affidavit, as that there shall be an amount of contribution, and that the true amount shall be stated. To guard against unsafe practices, and to secure the public against even innocent deception, or mistake, the statute demands that a limited partner shall pay into the capital a sum which he shall specify; that he shall make "*actual cash* payment" (1 R. S., 474, § 21), of that sum; that there shall be an affidavit of a general partner that such specific ` sum has been "*actually* and in good faith *paid in cash*" (id., § 7); and that notice shall be advertised of that sum,

                 * 61 N. Y., 571.

and of its payment. Certainly the statute meant cash, which is money in hand, and not credits of the special partner or other person however available, nor real estate however valuable, nor merchandise however salable. It was not meant to permit something supposed to be equivalent to money to be put in as capital, and so the door be opened for dispute and inquiry as to the real value of such substitute, with ofttimes doubtful and unsatisfactory result. The purpose was that the limited partnership should start in its business on a fixed and certain basis, with a sum in its possession of that which does command the markets, and makes the possessor of it equal, as a buyer, to any other, and to its extent as solvent as any other. It is not a substantial compliance with the statute to substitute for that some other thing, however convertible at the time, but which must be under the hazards and fluctuations of business, as to its readiness of convertibility, and amount of production. Nor need there be an intentional false statement to bring the parties within the reprehension of the statute. The object of the statute is, by the payment into the capital of a specified sum in cash, to give reasonable security to the portion of the public likely to deal with the partnership; and to insure the payment of that sum, thus, it requires the affidavit that the payment thereof has been thus made before the partnership can start as a limited one. The statement of the amount of the cash payment is required so that the public may gauge thereby the extent of its dealings with the firm. The affidavit is called for that the public may have reliance upon the existence of the fact of payment. The statute is thwarted, the public is misled, and its reliance is misplaced and deceived, as much when there is an unintentional untruth as when there is an intentional one. This statute does not set out to deal with motives, but with acts and their results; and it guards the public, not by requiring good intentions, but a certain act done in a certain mode, and a true statement that it has been done thus.

In *Ward* v. *Newell* (42 Barb., 482), the language of the

opinion is such, as that it is thought sometimes, that the court meant to hold that every violation of the statute must be shown to have been intentional on the part of the special partner before he can be charged as a general partner. In that case *The Madison County Bank* v. *Gould* (*supra*), is cited and relied upon; and therein Judge Bronson does, indeed, say : " I see no way in which the policy of the law can be maintained and the rights of third persons be effectually preserved, without holding that every intentional violation of the statute by the special partner will deprive him of that exemption from liability to creditors which he might otherwise claim." (Pp. 314, 315.) I will state, however, why I do not think that either of those cases are controlling of the one now here. *Ward* v. *Newell* was treating of an infraction of the thirteenth section of the statute, which requires that the business of the partnership shall be conducted under a firm in which the names of the general partners only shall be inserted, without the addition of the word " company," or any other general term. The firm name used did have the addition of that word. But it was not shown, says the case, that the special partner intentionally participated in the use of that firm name. Now the thirteenth section relates to the conduct of the partnership affairs after all the requirements of law for the institution of it have been observed and complied with, and it has obtained a legal existence. The case of *Ward* v. *Newell* holds no more than that after a legal and technical institution of a limited partnership, conduct of the general partners in carrying on of its business shall not cause the special partner to be deemed a general partner, unless he intentionally participated in it. It is to be observed, too, of the thirteenth section, that it does not in terms impose upon the special partner the penalty of general liability, save when his own name is used in the designation of the firm, with his privity. It may well be said that the law did not intend greater severity, for the use of the word company, or other general term, than for the use of the name of the special partner, and that if the one must

be with his privity to make him generally liable the other must be also. So that the case of *Ward* v. *Newell* does not touch the question of a false statement made in the affidavit which is a statutory prerequisite for the institution of a limited partnership; and of which the statute provides that it may be made by one of the general partners; but that if any false statement be made in it, that is by him, as it may be made alone by him, all the persons interested in the partnership shall be liable for all the engagements thereof as general partners. In *The Madison County Bank* v. *Gould* (*supra*) there is a distinction to be noticed, in the dealing of the court with different sections of the statute. The first question discussed was, whether a mistake in the published notice required by the statute (1 R. S., p. 765, § 9) of the time fixed for the commencement of the partnership, made the intended special partner a general partner. Although this notice is not made in terms, in the statute, a prerequisite to the legal institution of a limited partnership, and to its commencement of business, yet it is required that it be given; and it is declared that if it be not given the partnership shall be deemed general. In dealing with this mistake in the notice, the court did not say only, that if it was intentional it would be fatal, but if it was intentional, or, if the contract in suit had been influenced by it — that is, had been made before the mistake had ceased to operate — it would have been fatal. Obviously, lack of intention was not considered as alone enough to protect the special partner; but it must likewise appear that the mistake did not influence the contract. And it seems that a contract may be said to be influenced, though it is not shown to have been induced, by the erroneous statement. (*Smith* v. *Argall, supra.*) The next question presented in that case was, whether the buying of real estate, after the partnership had been formed, with its moneys, and the taking of the title to the lands in the names of all the partners, was a violation of the fifteenth section of the statute, and rendered the special partner liable as a general partner. This was a matter occurring after the due

institution of the limited partnership, and concerned the conduct of the affairs of the associates, who up to that time were entitled to the protection and benefit of the statute. It was held that the title to the real estate should have been taken to the general partners alone, but that as the special partner was not shown to be cognizant of the transaction and hence not to be holden as assenting to the disregard of the statute, he was not liable for the wrong done by his copartners.

Manifestly, there is a difference there recognized between a disregard of the provisions of the statute, which are prerequisites for the formation of a limited partnership, and of the provisions which are a guide for the conduct of its affairs, after it has had a legal inception. Until it is legally instituted there is no lawful limited partnership, and no member of the association may claim the protection afforded by the law. After it has been legally formed and had its start according to the law, it may be well said that the protection obtained shall not be forfeited by any member unless he himself is chargeable with knowledge of an infraction of its provisions and an intention to disobey its requirements. I think that the case of *The Madison County Bank* v. *Gould* recognizes and applied this distinction, and hence, that neither it nor the case of *Ward* v. *Newell*, which assumes to follow the other, are in hostility to the views here expressed.

The rulings of the learned referee, in the reception and rejection of evidence, which are brought to notice on the appellant's points, do not show such error as requires a reversal of his judgment.

The judgment appealed from should be affirmed, with costs.

All concur.

Judgment affirmed.