Andews, J.
The only questions before the general term were questions of law arising upon the exceptions taken by the plaintiff on the trial. The trial judge, upon the application of the plaintiff’s counsel, made after verdict, directed that the exceptions of the plaintiff should be heard in the first instance at general term, and that in the meantime judgment should be suspended. Upon a motion for a new trial, upon exceptions ordered to be heard in the first instance at general term, all controverted questions of fact are to be regarded as settled by the verdict of the jury, and neither the general term nor this court will consider the weight of evidence, or set aside the verdict on the facts, unless, indeed, there was such an absence of evidence to support a material finding, that the court can determine as matter of law that the fact found was unproved, in which, case an exception by the party against whom the verdict was directed, to the refusal of the court to direct a verdict in his favor, would be well taken.
Among the controverted questions of fact which were settled by the verdict in this case was the one relating to the day on which the firm of Sirrett & Stafford deposited to their credit in the Third National Bank of Buffalo the check of William B. Sirrett for $40,000, given to the firm for his contribution of capital to the special partnership. If the check was deposited on the 28th of December 1875, the day on which the affidavit of Stafford, the general partner, was made, and the payment was otherwise valid and effectual, *325 then, the partnership, so far as the contribution of capital was concerned, was regularly constituted, and the statement in the affidavit that this sum had on that day been “actually and in good faith paid in in cash by William B. Sirrett,” was true. The account of William B. Sirrett at the bank was good for the check. The check was drawn, dated and delivered to Sirrett & Stafford on the 28th. The only controversy at the trial on this branch of the case, was whether the check was actually deposited by Sirrett & Stafford in the bank on which it was drawn, and was credited by the bank to their account, on the 28th, as claimed by the defendant, or on the 29th, as claimed by the plaintiff. The question was submitted to the jury.
The evidence did not conclusively establish either claim, and whatever we may think as to the weight or preponderance of evidence, whether on the one side or the other, the finding of the jury is conclusive.
The main point of controversy on the merits, and the one upon which the general term set aside the verdict, grew out of the circumstances attending the transfer of the stock of goods of William B. Sirrett & Co. to Horace Stillman on the 28th of December, 1875, for the sum of $33,164.08, and the purchase by Sirrett & Stafford from Stillman, of the same stock for the same price, on the 30th of December, two days after the original sale. It was claimed by the plaintiff ou the trial, and the claim is strenuously urged in this court, that assuming that William B. Sirrett delivered to Sirrett & Stafford $40,000 in cash on the 28th of December, 1875, as a compliance in form with the requirement of the limited partnership act, that the contribution of the special partner to the capital of the limited partnership “shall be paid in cash,” nevertheless, the alleged payment in this case was a mere pretense, and was resorted to as a cover or device to evade the statute, and that in fact and law the transaction *326 proved was a putting in by William B/Sirrett of the stock of the previous firm of William B. Sirrett & Co., as his contribution as special partner to the extent of $33,164.08, to the capital of Sirrett & Stafford. The question was submitted by the trial judge to the jury, and in a variety of forms he instructed them that if the transaction disclosed by the evidence was a mere contrivance to evade the statute and to enable William B. Sirrett to put in the goods instead of cash, as capital, then the legal effect was the same as though William B. Sirrett had put in the goods directly, and as if no check had been given. The jury found for the defendant upon this issue also, and unless the uncontroverted facts establish as matter of law that the transaction was an evasion and violation of- the statute, their finding cannot be disturbed.
It is well settled, that under the limited partnership act the contribution of capital by the special partner must be made in cash, and that payment in anything else will not satisfy its requirements (Van Ingen v. Whitman,* 62 N. Y. 513; Durant v. Abendroth, 69 Id. 148). In this case there was a formal compliance with the act. William B. Sirrétt the special partner did pay to Sirrett & Stafford on December 28, $40,000 in cash, or in his check, which represented money, and which the firm converted into money before the making of the affidavit by the general partner on that day. On December 30, $33,164.08, of this money was applied by Sirrett & Stafford in the purchase from S fcillmart of the stock of goods originally belonging to William B. Sirrett & Co., which stock William -B. Sirrett, acting for William B. Sirrett & Co. (he being the real owner), had sold to Stillman for the same sum.
It is undoubtedly true that it was the expectation of William B. Sirrett and of the other members of the *327 firm of William B„ Sirrett & Co., before the actual organization of the firm of Sirrett & Stafford, that the latter firm, on being organized, would purchase the former stock of William B. Sirrett & Co., for the use of the new firm, and pay for the same out of the money which should be contributed by William B. Sirrett under the limited partnership agreement as his capital in the new firm, and further, that the sale to Stillman, and from Stillman to the new firm, was then contemplated. We are of opinion, however, that the question of intent and good faith was properly submitted to the jury, and that the transaction as disclosed,by the evidence could not as matter of law be adjudged a fraud upon the statute. The jury must be deemed to have found, as they were justified in finding upon the evidence, that William B. Sirrett in organizing the limited partnership firm, was actuated by honest and justifiable motives, and that it was not organized to escape his liability as partner in the firm of William B. Sirrett & Co., by saddling the debts of that concern upon the new firm. In organizing the new firm, which was to conduct the same business as the former one, William B. Sirrett was necessarily confronted by the question of the disposition to be made of the stock of the firm of William B. Sirrett & Co., of which, practically, he was the sole owner. The evidence shows, as has been said, that when the firm of Sirrett & Stafford was organized, he expected that that firm would purchase, out of the money furnished by him as capital, the old stock.
The jury have found that the stock was needed by the new firm in its business, and that the price paid, viz.: $33,164.08, was fair and reasonable.
There is nothing in the limited partnership act which prohibits a limited partnership from dealing with or buying goods for its business from the special partner. Transactions between the firm and the special *328 partner may be fraudulent in fact as to the creditors of the firm. But there is no disability, to engage in such dealings, imposed by the terms of the act, nor are such dealings, fairly conducted, inconsistent with the purposes or objects of a limited partnership.* That such dealing is permitted has been decided by the supreme court of Pennsylvania, under a statute almost identical with our own, and the same principle is recognized in the French law, from which the principle of limited partnership is derived (McKnight v. Ratcliff, 44 Pa. St. 156 ; Troubat on Limited Partnership, § 307).
It is easy to conceive of cases where the acquisition by the firm of a right, or property interest owned by the special partner, might be in the highest degree to the advantage of the firm, or even essential to the successful prosecution of its business. There would, therefore have been no legal objection to a purchase by Sirrett & Stafford 'from William B. Sirrett of the stock of goods, if it had not been preceded by an expectation or understanding, existing when the firm was organ *329 ized, that such purchase would be made. It may be that if, antecedent to the payment of the $40,000 by William B. Sirrett to Sirrett & Stafford, there was an agreement by which Sirrett & Stafford had obligated themselves to purchase this stock of goods, and pay for it out of the fund contributed by William B. Sirrett, the payment could not be upheld as a payment in good faith in cash by the special partner of his capital, under the statute. It would be a payment connected with an antecedent agreement restricting the liberty of the general partners in the use of the money, and practically appropriating it in advance. The general partners would be deprived of the control of the fund, and as was said in Van Ingen v. Whitman {supra), the partnership would not “start in its business on a fixed and certain basis, with a sum in its possession, of that which does command the markets and makes the possessor of it equal as a buyer to any other.” But the evidence fails to establish that there was any agreement binding upon Sirrett & Stafford to purchase the stock from William B. Sirrett & Co., or from William B. Sirrett, or Horace Stillman, or which deprived them of the legal liberty to disregard and repudiate any prior understanding with reference to the purchase of the stock, or which prevented them from using the money received from William B. Sirrett, in the firm business in any manner they should see fit. It is true, Sirrett & Stafford met the expectation of the parties and bought the stock, and thereby William B. Sirrett was enabled to receive $33,164.08 of the money paid into the firm. He did not receive it, however, as a return of his capital paid in. The transaction, on his part, was not in form or in legal effect the same as though he had put in the goods as part of his capital, instead of the money. The money, when paid, was put beyond his control and placed in the legal possession of the general partners, and was subject to *330 any disposition they might make of it. The purchase, in effect, was a transaction of the firm after it had been organized, and not the consummation of a prior contract, or at least the jury were at liberty so to find.
There is nothing in the letter nor in the policy of the limited partnership act to prevent the change of an existing partnership into a limited, one. The practical convenience of such a proceeding in many cases is manifest. It enables a general partner, who, by reason of age or infirmity, or upon any other ground, desires to withdraw from the active management of the business, to place it in the hands of his copartners, risking only his capital, and at the same time securing to the new concern the good-will and business advantages possessed by the former one. The practical arrangements by which such a change is effected usually include the taking by the limited parnership of the assets of the general partnership., The special partner cannot put in his stock in the old concern upon a valuation, as his capital, because the statute requires it to be paid in in cash. But the statute does not prohibit the limited partnership from purchasing in good faith of the former firm, or from paying for it out of capital contributed fey. the special partner, although it may happen that the latter is enabled to receive the greater part, or the whole of the purchase-money, and is placed in substantially the same position as if he originally had put in the stock as capital instead of money. The transaction is not a withdrawing of the capital of the special partner. It is the employment of that capital in the business of the limited partnership. If the purchase( of the stock was made a condition of his contribution of capital, a different question would be presented. But where a limited partnership is at liberty to purchase the stock, or to use the fund for any other partnership purpose, bad faith in constituting the partnership is not a legal' *331 inference from such a transaction, and this although the expectation that the new firm would make the purchase, existed when the partnership was formed The case of Lawrence v. Merrifield, decided in the New York superior court and reported in 42 Super. Ct. (8 J. & S.) 36,* and affirmed in this court (73 N. Y. 590), tends to support the conclusion we have reached upon this branch of the case.
The exception to the denial of the trial judge of the plaintiff’s motion, to compel the defendant William B. Sirrett to - produce the books kept by him as county treasurer, is not available, for the reason among others that it was wholly immaterial to the issue whether the money loaned by William B. Sirrett to Stillman to pay for the stock of goods, was or was not advanced out of the, funds received by Sirrett as county treasurer. The county of Erie makes no complaint of the misuse of its funds. The pecuniary responsibility and solvency of William B. Sirrett at the time of this transaction was assumed on the trial. The loan was made by means of a check upon his general account, and if that account was made up of county funds, it was made good for the amount withdrawn on December 28, by a deposit of the same amount to the credit of the account on the 30th of the same month. Whether William B. Sirrett- borrowed the money to loan to Stillman, from a friend, or took it temporarily from the funds of the county, was not we think a material circumstance bearing upon the *332 question whether the $40,000 paid to Sirrett & Stafford was in fact paid, or was paid in good faith.
The plaintiff’s counsel, at the conclusion of the evidence, moved the court to direct a verdict for the plaintiff on several grounds not involved in the foregoing discussion. 1. The objection that the provision in the certificate filed on December 28, 1875, permitting the special partner to draw the interest on his capital monthly, was 'a violation of the provision in the fifteenth section of the limited partnership act, which .permits the special partner annually to receive lawful interest on his capital under the circumstances stated in that section, is not we think well taken. The stipulation in the partnership articles (which were filed as the certificate) for periodical payments of a proportionate part of the annual interest, fairly construed, relates to interest earned at the time such payments are provided to be made, and is not a violation of the statute. The word “annually” in the fifteenth section has, we think, the same meaning as per annum or “by the'year,” and like the statute of usury this section is not violated by a provision that the annual interest may be paid quarter-yearly, or at other stated periods less than a year.
2. The provision in the partnership articles that the special partner should bear a proportion of the losses, was in the interest of creditors, and there is nothing in the act prohibiting the special partner from extending his liability by agreement with the general partners, or assuming risks beyond the loss of his capital.
3. The certificate filed on the renewal of the partnership, December 5,1877, stated all the facts required to be stated by the fourth section of the act. The notice published was a copy of this certificate. The ninth'section requiring publication of the terms of the partnership is satisfied, we think, by a publication of the terms of the certificate, and an omission to state in the pub *333 lished notice all the details of the partnership agreement, is not a failure to comply with the provision as to publication, so long as the publication contains all the facts required by the fourth section (See Troubat on Limited Partnership, § 84).
4. The change in the name of “The Buffalo Daily Dispatch and Evening Post,” one of the newspapers in which the notice was directed to be published, to that of “The Buffalo Evening Post,” made after the publication was commenced, did not, we think, affect the validity of the publication. The identity of the paper was not lost by a change of name merely, and the purpose of the statute was accomplished by continuing the publication in that paper under the changed name.
5. The court would not have been authorized to direct a verdict on the ground that when the certificate and affidavit for the renewal of the partnership were made and filed, the capital of William B. Sirrett, the special partner, had been impaired. There was not only no conclusive evidence of the fact, but we are unable to find any evidence which affords ground for anything more than a conjecture that such a fact existed. But however this may be, the question could not be ruled as one of law.
The plaintiff’s counsel made requests to charge which he claims were disposed of by the trial judge to his prejudice. There is, we think, no exception which brings up the questions raised bjr these requests, or the disposition made of them by the court. It is therefore, unnecessary to consider whether there was any error committed in regard to them.
There are some other questions raised by exception, not specifically considered in this opinion. We have examined them and are of opinion that none of them are well taken. Upon the whole case as presented, we are of opinion that no legal error was committed on *334 the trial, and that the order of the general term granting a new trial should be reversed, and judgment directed for the defendant on the verdict.
Note.—In Hanover National Bank ®. Sirrett (Superior Court of Buffalo, Special Term, June, 1883), it had been previously decided, that if, when a limited partnership is formed, the cash is in fact paid into the firm, although directly laid out by the general partners in the purchase of merchandise from the special partner, yet the transaction cannot be pronounced by the court to be a fraud upon the law, or void in law, but must be presented as a fact for the jury to find whether a fraud was committed against the public, either by the contribution of the property to the capital of the firm, disguised as cash, or as a sale from the special to the general partners at dishonest valuations contrived to impose upon the public.
Motion for a new trial brought on by the plaintiff on a case and exceptions. The action was brought upon several promissory notes of the firm of Sirrett & Stafford, the essential facts being found substantially as in the foregoing case (p. 331).
Hiram C. Bay (Bay & Homer, attorneys), for the plaintiff.
Norris Morey (Sprague, Morey & Sprague, attorneys), for the defendant.
Beckwith, J.
(After stating the facts).Did the defendant pay in $40,000 in cash, in conformity with the statute ? The proofs show clearly enough that the transmutations by means of the checks and the conveyances through Stillman, were a contrivance to enable the new firm to acquire the merchandise. They were plainly a device either to let the defendant put in the goods, or to enable the firm to buy them. The plaintiff claims that the transactions bear but one construction, and that upon their face the court should pronounce them a fraud upon the statute. Literally, the defendant paid in $40,000 in cash, but it is rejoined that the spirit of the statute was evaded. I conceive that cash is paid in in good faith under the statute when it is paid in to stay there—the firm to have the benefit of it— when it is not to be returned in any way to the contributor. In short, in the honest sense of the word, when it is paid in, it is paid in good faith. The $40,000 being actually contributed in cash, if it be said that the spirit of the statute was evaded, or the policy of the law cir-. cumvented, the reasons ought to appear. Here, evidently, the claim is that when it was paid in, it was understood that it would be immediately returned to the contributor. It was, in fact, before its ap *335 plication to any other object, through the medium of Stillman, paid back to the defendant; but it was not paid back to him for nothing. The new firm, thereby, obtained title to the goods, as their stock in trade, at the inventoried prices, which are not shown to have been unfair. The design of the statute, it is said, is to draw dormant capital into the enterprises of trade and commerce, and it would seem that the statute need not by construction be given a force, having uo public object, that is antagonistic to the ordinary rights of the individual partners. It should not be made a trap for the unwary by construction. To say that a transaction was a device is an easy thing to say, but it is not altogether satisfactory, if in any view of the facts it may have been consistent with good faith. I have no idea that the legislature required the special partner’s contribution to be in cash for the sake of the cash itself, but because the cash would be an absolute measure of the amount of capital contributed by him. Indeed, the statute forbids a limited partnership for the purpose of dealing in money, as, for instance, banking. A limited partnership is essentially a contract of labor and capital. Lem's Mercantile Law, 215.
It may be urged in support of the view that the cash was not paid in absolutely and in good faith, that the previous understanding to form a limited partnership, and then to take the property of the special partner at a fixed price, was likely to operate as a restraint Upon the general partners and a limitation of that free dominion over the funds to be contributed by the special partner which the statute contemplates they should have, and which they would have if the money were paid in without any prior arrangement, and, further, that under such circumstances the prospects opened by a proposed partnership might induce the general partners to allow more for the property proffered by the capitalists than it is reasonably worth. And when a special partner pays in the cash upon an understanding that it is to be applied to the purchase of property from him at prices he has fixed or helped to fix, there is an appearance of allowing him thus to determine how much capital he contributes to the firm, when dollars paid in without any preconceived or preconcerted application of the money, you Id give a certain measure and an absolute quantity.
On the other hand, it may be contended that the law does not extend its guardianship so far as to' undertake to guide the general partners in the investment of their capital, or in buying and selling, and that the firm and its creditors can have no real security but that found in the good faith and intelligence of the general partners; and that "the cash capital being paid in, there is no reason why the right of the general partners to buy as they think best should be abridged. Since the amendment of 1857 to section 17 of the statute, the special *336 partner may not only advise as to the management of the partnership concerns, but he may negotiate purchases to take effect when approved by a general partner. This provision, however, relates to his acts in the capacity of a partner or as representing the firm or general partners. The interference by transacting business or acting as agent for the firm, upon which the penalty of liability as a general partner is imposed by the statute, means an interference by intrusion into the office of a general partner, and the performance of acts that pertain to the office of the general partner, and which might therefore deceive the public with the idea that he who so appears to be, is in fact a. general partner.
But in treating for the sale, to the general partners, of his stock of merchandise, the special partner may be regarded as acting for himself individually, as owner of the property, and in a capacity distinct from his membership in the firm.
Under the French code, from which the principles of our statute are said to be derived, it is held, after the most careful consideration, that a special partner may deal and trade on his own private account with his copartners as a firm, in the same way he could deal with any other firm or individual. Troubat on Limited Partnership, § 307. If, after a free formation of the partnership, he could have treated for the sale of his individual property to the firm without making himself liable as a general partner, it does not clearly appear why the same course of conduct, had contemporaneously with the formation of the partnership, would have that effect. Would an. executory agreement, that after the formation of a proposed limited partnership he would sell goods at a certain price, subject him, upon the subsequent actual sale, to the penalty of the statute ? It is true, that if it should be held that such a contemporaneous arrangement Or agreement could- be lawfully made, a door would be left open for the fraudulent contribution of property instead of cash, contrary to the policy of the statute. Certain provisions of the statutes give some indications of legislative intent to prohibit dealings, on his individual account by the special partner, with the firm, in specifying that loans may be made and suretyships assumed, and leases given by him. But these specifications are coupled with provisions making valid the securities taken by the special partner from the firm. Giving the note of the firm would be an act for the general partner, and the special provisions of the statute may have been thought necessary, to prevent the special partner, who should take a note, from being charged with interference in being a party to the giving of the note. I think, however, that the penalty of the statute is aimed at the case of a special partner acting like a general partner, and in a manner that *337 might induce those dealing with the firm to put their trust in him as a partner. Here, if there was a sale by the defendant to the firm, then he was acting for himself and not asa representative of the firm; if it was a sale by Mr. Stillman to the general partners, then the defendant would run the risk of a charge of acting for the firm, inasmuch as he put the train of events in motion which resulted as he designed and planned, in the purchase of that stock of merchandise. It might be said that the direction given by his hand continued until after, and took effect after, the formation of the limited partnership, and so made him an actor in the transactions of the firm itself; but the statute expressly authorizes the special partner to negotiate purchases to become binding on the firm, when approved by a general partner. The conclusion reached is this: If, when a limited partnership is formed, the cash is in fact paid into the firm, although directly laid out by the general partners in the purchase of merchandise from the special partner, yet the transaction cannot be pronounced by the court to be a fraud upon the law, or void in law, but must be presented as a question of fact for the jury to find whether a fraud was committed against the public, either by the contribution of the property to the capital of the firm, disguised as cash, or as a sale from the special to the general par'ners at dishonest valuations contrived to impose upon the public.
The various aspects of this case were discussed fully before the jury, and their verdict was rendered for the defendant. I do not think a new trial should be granted upon any of the grounds discussed on the hearing of the motion, and I do not think that the court should decide as a matter of law that the transactions connected with the formation of the limited partnership w re an “ evasion of the spirit of the statute.”
Motion denied, costs to abide the event.
On appeal this decision was affirmed by the general term, December, 1884.

 Followed in Maginn v. Lawrence, 45 Super. Ot. (J, <6 S.) 385.

 Section 17 of the act expressly provides that a special partner “ may also loan money t,o, and advance and pay money for, the partnership, and may take and hold the notes, drafts, acceptances and bonds of or belonging to the partnership, as security for the repayment of such moneys and interest, and may use and lend his name and credit as security for the partnership, in any business thereof, and shall have the same rights and remedies in these respects as any other creditor might have. . . . Excepting as herein mentioned, he shall not transact any business on account of the partnership, nor be employed for that purpose, as agent, attorney or otherwise. If he shall interfere contrary to these provisions, he shall be deemed a general partner.”
A special partner, who buys out the entire firm property, and continues the business in his own name, for his own account, interferes with the firm business contrary to section 17, and renders himself liable as a general partner. First Nat. Bank of Canandaigua v. Whitney, 4 Lans. 34.

 In this case, the special partner’s assets in an old firm were sold to a general partner for cash, and the special partner contributed this cash to the capital of the new firm, and this was held to comply with the statute. The nature of the transaction between the parties, or the means used to obtain the money contributed, are immaterial, so long as the special partner becomes the owner thereof. Lawrence v. Merrifield, 42 Super. Ct. (J. & S.) 36.