By the Court.—Vah Vorst, J.
—Limited partner ships can .only be formed in' pursuance of the statute, and in the manner substantially directed. It is provided by statute that persons desirous of forming such a partnership shall make, sign and acknowledge a certificate, ‘ the contents of which are given; that the certificate shall be filed in the office of the clerk of the county in which the principal place of business of the partnership shall be situated; that the certificate shall be recorded by the clerk “in a book to be kept for that purpose, open to public inspectionthat “no such partnership shall be deemed to have been formed until a certificate shall have been made, acknowledged, filed and recorded,” as above directed. There are other incidents and steps not necessary to be stated here (1 Rev. Stat. 765, §§ 4-8).
The case under consideration arises from a failure to record the certificate in pursuance of the requirement of section 8.
The defendant, Laimbeer, who is sued as a general partner, claims that the firm of which he was a member was a limited partnership, duly created under the statute, and that he was the special partner, and as such is not liable for the debt sought to be recovered in this action.
Evidence was introduced, on behalf of this defendant upon the trial, tending to show that, on or about the date of the formation of the firm,' formal articles of partnership, and a certificate and affidavit, papers used in the forming of such limited partnership, were executed by the parties interested, and that the certificate and affidavit were delivered by the *126 direction of the defendant Laimbeer to the clerk of the city and county of New York, with directions to him to file the same, and that the fee demanded by the clerk was paid.
It was, however, proved on the trial that no certificate of the formation of the alleged limited partnership was ever recorded; in the office of the clerk, in the book kept by the clerk for the purpose, and that no such certificate could be found on the files.
The learned counsel for the defendant, at the close of the evidence, asked that it should be presented to the jury “ whether or not the defendants, in fact, did cause to be filed the certificate and the affidavit which goes towards making up this special partnership; whether in fact they did leave them in the county clerk’s office, in the proper place, and with the proper person, with the request that they should be filed ; and also whether they are now on file in that office.”
In disposing of this request, the learned trial judge said: “The statute refers to a point when shall begin the special partnership, and it says that no such partnership shall be deemed to have been formed until the certificate shall have been made and acknowledged, filed and recorded. There is no dispute that this certificate was not recorded. I must hold that the defendant is liable as a general partnerand he directed a verdict for the plaintiff.
We are of opinion that the learned chief justice, who presided at the trial, was right in the conclusion he reached, and in the direction he gave.
We have already said that the provisions of the statute which authorize limited partnerships, through which the special partner is exonerated from the common law liability of a general partner, must be at least in substance followed.
This rule obtains with respect to all statutory rights and immunities, especially when peculiar privi *127 leges and exemptions are conferred. upon particular individuals or classes.
The first section of the act in regard to limited partnerships expressly ordains that such partnerships shall only be formed upon “the terms,” and “subject to the conditions” expressed.
These terms and conditions are expressed with clearness. And not the least, of them is the provision requiring the recording of the “ certificate ” by the “ clerk,” in a book to be kept for the purpose, open to public inspection ; and this direction is followed by the distinct proviso that until the “certificate” shall have been recorded, the partnership shall not be deemed to have been formed.
The filing of the certificate with the clerk of the county by the special partner is no satisfactory answer to the unambiguous declaration of section 8, determining the consequences of a failure to record the certificate, nor does it avoid those consequences.
When we consider the scope and object of the statute, and its provisions through which partnership liabilities are limited, and peculiar privileges are conferred upon one embarking in partnership engagements, we cannot overlook the importance of the provisions requiring the recording of the certificate in an appropriate book, open to the inspection of all who may have dealings with the firm.
The legislature intended, in the directions given, to provide for recording of the certificate, as a condition precedent to the creation of the limited partnership.
It is true that the duty of recording is cast upon a public officer, but the consequence of his failure to perform the duty is, in effect, cast upon the person claiming to be the special partner.
The consequences of such failure must rest somewhere, and the legislature have the power, in framing the law, to say where they shall rest. The consequence *128 is -that the projected enterprise never becomes operative as a limited partnership.
It is urged by his counsel, that the defendant, having filed the papers, had a right to rest upon the presumption that a public officer will perform his duty. That is not an indisputable presumption, and is liable to be rebutted, and experience shows that it is fallible. But in the face of the positive injunction of the statute under consideration, a person would rely upon such presumption at his peril, and would suffer the consequence of a failure on the officer’s part to perform his duty.
In Smith v. Argall (6 Hill, 479), it is said “ partners are bound at their peril, not only to see that all the necessary papers are filed and recorded, but that correct notices are published.”
And in Van Ingen v. Whitman (62 N. Y. 513), the court says : “ This statute does not set out to deal with motives, but with acts and their results, and it guards the public not by requiring good intentions, but a certain act done in a certain mode.”-
Notwithstanding the express directions to the clerk in section 6, to record the paper in an appropriate book, had the words “and recorded” been omitted from section 8, a filing of the paper with the clerk might have been sufficient to create the partnership, for in such case the defendant might have been justified in relying upon the clerk’s performing his duty. But by the terms of section 8, a filing of the certificate is not enough to prevent the consequences therein declared. Effect must necessarily be given to the words, “ and recorded.”
The current of authority with respect to the statute in question is very considerate. While on the one hand mere technical and immaterial omissions or mistakes have been disregarded, defects in substance have *129 imposed upon the special the liabilities of a general partner.
In Levy v. Lock (5 Daly, 46), where the certificate was not filed for twenty-eight days after its execution, the partnership was held to be a limited one as to creditors, becoming such after the filing.
In Bowen v. Argall (24 Wend. 496), a mistake in publication of the names of partner, as Argale for Argali, was held not to vitiate the publication.
But Haviland v. Chace (39 Barb. 283); Argall v. Smith (3 Denio, 435); Van Ingen v. Whitman (62 N. Y. 513); Durant v. Abendroth (41 Super. Ct. [J. & S.] 53, 59 ; aff’d in 69 N. Y. 148), are illustrative of the strictness to which persons are held in proceeding to organize as a limited partnership under the statute in question.
In our State, no case seems to have arisen in which the effect of an omission on the part of the clerk to record the certificate, where one had been filed with him, has been distinctly considered.
The only case which we have been able to find which treats directly upon that question, arose in the supreme court of Michigan. It is Gray v. Gibson (6 Mich. 300). In that case, the New York statute concerning limited partners was directly under consideration, and this question was passed upon. Two opinions were written in the case, but upon this point there was a concurrence. It appeared that the,, certificate had been duly filed, but had not been recorded by the clerk. Christiancy, J., in his opinion says: “The certificate in this case, not having been recorded, did not and was not claimed to have the effect to create a limited partnership.” And Justice Mawhtno, in his opinion, page 325, says “ the certificate was made and acknowledged, and with the requisite affidavit was filed, but it was not recorded. Why it was not recorded does not appear. . . From whatever cause, it *130 did not put an end to the copartnership, but left it as if nothing had been done, under the act, an unlimited partnership, or partnership at common law.
Henkel v. Heyman (91 Ill. 96) contains an obiter dictum in these words : “ Had the certificate, acknowledgment and añidavit been left with the county clerk, with directions to file them, his refusal to comply with the directions would not, doubtless, have affected the rights of the parties. In that case the parties would have done all that they could have done to comply with the law.”
That statement was not necessary to the decision of the case, as will be seen upon an examination, and it is an incomplete view of the duty of one seeking to become a special partner under the statute. He could have done more than direct—he could have demanded the recording as a right, and could have compelled its performance. There is no reason to suppose that upon the tender of fees for recording, such a demand would have been refused. It is the interest of the county clerk to record, as it is his duty to do so.
We are not justified in looking for sone unnatural or unreasonable grounds upon which to base a supposed refusal to record, or to regard it as intentional or willful, in order to defeat the operation of the statute.
It is suggested on the defendant’s behalf by his learned counsel, that because the statute in question does not, as the act of 1882 did, declare it to be the duty of all the partners interested to see that the requirements of the several sections of the act are complied with, that no duty in this regard is imposed upon them, other than to file the certificate.
We do not so look upon the statutory changes.
Section 8 of the present statute, substituted in the place of the former one, amounts to an injunction to do certain things, if a person would avail himself of the *131 statute. Under the former statute, the consequence of failure in anything directed to be done, was to make ct all the partners interested in such partnership liable for the engagements thereof, as general partners.” Under the present statute, such failure leaves it, the copartnership, as was said in the Michigan case, “ as if nothing had been done under the act” towards creating a u limited partnership.”
And such is the effect of the direction given by the chief justice upon the trial of this cause.-
It is stated in a note to Kent's Commentaries, vol. 3, page 36, that 66 it has been ruled in Hubbard v. Morgan (U. S. D. C. for N. Y., May, 1839), that the special partner must, at his peril, see that the law is complied with in all its essentials, as he will be liable as a general partner.”
We have examined the cases of Veeder v. Mudgett (95 N. Y. 295) and Sutherland v. Olcott (29 Hun, 161), arising under the act for the formation of manufacturing companies, which imposes and'continues liabilities upon stockholders for a failure on the part of the officers to file a certificate called for by that act.*
But the analogy between cases arising under the provisions of that act, and those falling under the limited partnership act, is imperfect. These cases are clearly in principle distinguishable from the one before us. The omission to file and record a certificate of the payment of the capital stock in pursuance of section 11 of the act, did not touch the question of corporate life. The corporation existed whether the certificate was or was not filed. The omission to file and record the paper affected the continuance of the stockholders’ liability, determined by a previous section of the act. In the first of these cases the main question seemed to *132 be, whether the thirty days’ clause mentioned in section 11 was mandatory or directory ; it was held to be directory. It was indeed held that the officers or stockholders were not responsible for the failure of the county clerk to record the certificate. But it is quite clear to us that the structure, scope and policy of the act concerning limited partnerships, differs wholly from the portion of the manufacturing act considered above.
It seems to us entirely clear that the provision for the recording of the certificate is as important as that for filing, and is in the same category, and that it is not directory ; that it is made absolutely fundamental to the validity of the effort to constitute a limited partnership, and is in effect mandatory.
It follows, therefore, from what has been already stated, that it is as much the duty of the persons seeking to form such limited partnership to see that the certificate is recorded, as it is to file the instrument, as a condition precedent to the creation of the partnership.
No argument can be adduced from the provisions of the 1: recording acts” to which our attention has been called or the practice thereunder, which will break the force of the conclusion above reached.
We have examined all the exceptions taken by the learned counsel for the defendant, and do not find that any of them can be sustained.
The judge’s disposition of the other question upon which the defendant’s counsel asked to go to the jury, —that is, as to whether the notes were paid or not,— was entirely correct.
The exceptions of the defendant are overruled and judgment is ordered in favor of the plaintiff on the verdict, with costs.
Note.—In Osborn v. Alexander (Oneida County Court, October, 1885, Sutton, County Judge), it was held that under the chattel *133 mortgage act (L. 1833, c. 279; same statute, 3 R. S. [7 ed.] 2249)— declaring (§ 3) that every mortgage filed, should cease to be valid as against creditors, etc., after the expiration of one year, unless within 30 days preceding its expiration a true copy with a statement exhibiting the mortgagee’s interest in the property should be again filed,—the makingof a new mortgage in place of the old and filing it within the time prescribed was not sufficient; for this is not a declaration by the mortgagee of his interest ; and would allow the mortgagor to file a new mortgage as a cover for fraud. In such case, the old mortgage must be deemed to lose validity at the expiration of the year, and the new mortgage must be deemed to be given for an antecedent debt without new consideration ; and the court cannot give it relation back, so as to defeat an execution issued and in the hands of the sheriff before and at the time of the filing of the new mortgage.
Trial by the court.
Henry R. Osborn sued Edward T. Alexander to recover certain chattels, or the value thereof, if possession could not be had.
It appeared that. Alexander, being the owner of the chattels, mortgaged them to one Isaac Beecher for §3,000 in July, 1877, and a true copy of the mortgage was duly filed in July, 1878. In July, 1879, 1880, 1881, and 1882 a new mortgage to secure the same sum,- and on the same property (with the omission of an animal that died meanwhile), was duly executed and filed. This was done by' Beecher’s instructions and in pursuance of an agreement duly made between Beecher arid the defendant, by which the defendant, prior to the time of the execution thereof and of each of them, duly agreed-to execute the same.
Ho part of the mortgage debt had been paid except a trifling sum.
On March 25, 1880, one Marshall W. Barker recovered judgment against Alexander, the debtor, which was docketed on February 25, 1881, and this judgment was on February 25, 1881, assigned by Barker to F. Isabella Osborn. Execution thereon was issued and delivered to the sheriff of the county, July 13,1882, with instructions to levy.
The defendant. Alexander, and Isaac Beecher, the mortgagee, had no knowledge that such execution had been issued, and meanwhile,intermediate the delivery of the execution and its levy, the last of the chattel mortgages was given and filed before the levy. The sheriff sold the chattels to Osborn, the present plaintiff, announcing that he sold and conveyed the absolute title, and after the sheriff had delivered possession to the plaintiff, Beecher, the mortgagee, after demand and refusal, seized the same, claiming them by virtue of the mortgages.
*134 It appeared that plaintiff and the judgment creditors each of them, had knowledge of the mortgage to Beecher, and that at the sale in their presence Beecher forbid the levy and sale.
W. T. Dunmore, for plaintiff, appellant.
James E. McCabe, for defendant, respondent.
Osborn, J.—[After stating the facts.]—The statute in reference to chattel mortgages is as follows : “Every mortgage filed in pursuance of this act shall cease to be valid as against the creditors of the person making the same, or against subsequent purchasers or mortgagees in good faith after the expiration of one year after the filing thereof unless within thirty days next preceding the expiration of each and every term of one year after the filing of such mortgage a true copy of sucli mortgage, together with a statement exhibiting the interest of the mortgagee in the property thereby claimed by him by virtue thereof, shall be again filed in the office of the clerk or register aforesaid of the town or city where the mortgagor shall then reside.”
Section 1405 of the Code of Civil Procedure is as follows : “ The goods and chattels of a judgment debtor, not exempt, by express provision of law', from levy and sale by virtue of an execution, and his other personal property, which is expressly declared by law to be subject to levy by virtue of an execution, are, when situated within the jurisdiction of the officer, to whom an execution against property is delivered, bound by the execution, from the time of the delivery thereof to the proper officer, to be executed ; but not before.”
Section 1409 of the Code of Civil Procedure provides : “The title to personal property, acquired before the actual levy of an execution, by a purchaser in good faith, and without notice that the execution has been issued, is not affected by an execution delivered before the purchase was made", to an officer, to be executed.”
In this case, plaintiff was a creditor within the meaning of the statute above cited; that is, he had, prior to the filing of the last chattel mortgage, recovered a judgment, and his execution issued upon that judgment was in the hands of the proper officer and was a lien upon the property of the judgment debtor.
Whether that execution could be enforced, and a sale, made under and by virtue of it, would vest a good and valid title in the purchaser, as against the last chattel mortgage filed, depends then upon the construction to be given to the statute in reference to chattel mortgages and the sections of the Code above cited.
That language of the statute is: “a chattel mortgage shall cease *135 to be valid as against creditors.” There is but one exception to that plain statement, and that is, in case a copy of the mortgage, together with a statement exhibiting the interest of the mortgagee in the property, is duly filed within thirty days before the expiration"of the year.
The plain object of this statute is to prevent fraud ; it is to fix a short limitation upon the validity of liens upon personal property which is movable, of uncertain identity, next to a circulating medium or currency. The policy of the law, while it permits a lien upon this class of property, is to hedge that lien about with restrictions which will prevent its use for any fraudulent purpose.
The general presumption is, that the possessor is the owner, and that, where possession and right of possession are vested in one person, the presumption is very strong, and public policy demands that the person in whom this possession and right of possession is united have full power to dispose of the property, and that creditors have a right to apply it to the satisfaction of their debts. One plain intent of the law in providing for the refiling of a mortgage, is to purge the conscience of the holder of that security as to the exact amount for which he claims the right to enforce it.
To make a new mortgage in place of the old one and refile it each year, brings from the mortgagee no declaration of his right or interest in it, and is an act which may be done by the mortgagor without the knowledge or consent of the mortgagee, and in effect deprives creditors and others who may become interested in the property in question of any knowledge of the amount of the lien. A mortgagor having an intent to cover up his property, and to ward off his creditors, may do so with perfect impunity if his own act of making and filing a chattel mortgage were sufficient for that purpose. A mortgage once given in good faith for a valuable consideration may be used as a cover and kept in existence as long as it may suit the purposes of the mortgagor.
The statute is aimed at that very evil, and to prevent it requires that the mortgagee shall file his copy and his statement that notice may be given of what he claims.
The general declaration of the statute is, that the mortgage shall cease to be valid; the exception is, if a copy and statement are filed; refiling a new mortgage for the same consideration covering the same property, by the mortgagor, is not in any sense the equivalent of filing the copy and statement by the mortgagee.
If these views are correct, it follows that the last mortgage filed was simply the execution of a chattel mortgage for an antecedent debt without any new consideration. For, under the statute there *136 can be no connection or relation between the old mortgage about to expire and the new mortgage placed on file by the mortgagor, and the old mortgage would cease to be valid at the expiration oí the year prescribed by statute.
The new one would have such validity, and no more, as it derived irom the circumstances under which it was given, without reference to or connection with the old mortgage about to expire. The holder of the last mortgage is not a purchaser in good faith, under section 1409 of the Code of Civil Procedure, and the execution of it was tantamount to a chattel mortgage executed for an antecedent debt, and without any new consideration.
And when the old mortgage expired and ceased to be valid as against this execution, the officer had a right to sell the property by virtue of it, irrespective of the new chattel mortgage, which had been filed, and the purchaser acquired title to the properly, discharged of the lien of the chattel mortgage, and consequently was entitled to recover it in this action of replevin.
Judgment should be entered that plaintiff recover the property which is the subject matter of this action, or its value.

 See also Butler v. Smalley, Ct. App., Jan., 1886, Opin. in 4 Northeastern Rep. 104; rev’g 49 Super. Ct. (J. & S.) 493, and explaining Cameron v. Seaman, 69 N. Y. 396.