Haviland *v.* Chace.

---

HAVILAND and others *vs.* CHACE and others.

Where a special partner does not pay, *in cash*, the amount of capital agreed to be contributed by him, but makes the payment in goods &c., this is not a compliance with the statute respecting limited partnerships.

If the provisions of the statute are not complied with, the limited partnership is not formed, and if a false affidavit in respect to the payment in cash of the sums alleged to have been contributed by the special partners, is filed, all the partners will be liable for *all* the engagements of the partnership, as general partners.

The liability of each partner, in such a case, will not be limited to the proposed term of the special partnership, but extends to all the engagements of the partnership, so long as it has a legal existence. GOULD, J. dissented.

APPEAL from a judgment entered on a verdict rendered at the Columbia circuit in 1860. The action was brought upon several notes made by the alleged general partner in a

special partnership, and the defendant Chace was sought to be held thereon, on the ground that he had not paid in, "in cash" the amount of capital which the papers filed alleged he had; the payment having been made in goods &c. The judge at the circuit held that he was not thereby made a general partner, but was liable under the statute, for the engagements of the firm, up to the time for which the alleged special partnership was formed; not for those thereafter made. The plaintiffs had a verdict for some of the notes coming within the decision, and excepted to the ruling, as to the other notes. Judgment having been perfected, this appeal was brought, by the plaintiffs.

*M. I. Townsend*, for the plaintiffs.

*J. H. Reynolds*, for the defendants.

PECKHAM, J. Upon the first question involved in this case, as to the statute having been complied with by the alleged special partner, by paying in his capital in actual cash, there is no difference of opinion in the court. We all agree that it was no compliance.

The only remaining question arises upon the true construction of the eighth section of the act in regard to special partners. And here I may remark that the equities of any particular case, and the reliance that any creditor may have placed upon the credit of the alleged special partner, are blind guides in the sound interpretation of a general statute, founded upon enlarged principles of public policy. Such considerations are far more calculated to mislead than to enlighten.

We agree that the defendant Chace did not pay in the amount of the cash capital agreed to be contributed by him in order to make him a special partner. The affidavit required by the seventh section to be filed was not true, as to the alleged payment in cash.

In giving construction to a statute the legislative intent is to control, irrespective of the mere proprieties of language, or the strict grammatical import of isolated words or phrases. An attempt to discriminate unjustly and without reason between different cases of a like kind is not to be ascribed to the legislature, unless expressed with irresistible clearness.

These rules are quite familiar, but they are well illustrated in *Olcott* v. *The Tioga Rail Road Company*, (20 *N. Y. Rep.* 210,) in the elaborate points of the counsel for the appellant in that case, and in the case itself.

In the statute under consideration the mode and manner in which a person may become a special partner are carefully pointed out. And it is obviously the general purpose of the statute to make such person a general partner, if he fail to comply with those provisions. In fact it would seem to follow as a matter of course that such person would be a general partner if he failed to comply with the provisions that make him a special partner, though no express declaration to that effect were contained in the statute. It is only by force of the statute that his liability is limited. It is there limited upon his compliance with the provisions which alone make him a special partner. The first section provides that limited partnerships "may be formed upon the terms, with the rights and powers and subject to the conditions and liabilities herein prescribed." If such provisions are not complied with, it follows, without any declaration to that effect, that the limited partnership is not formed. Now the eighth section says expressly that "no such partnership shall be deemed to have been formed until a certificate shall have been made, acknowledged, filed and recorded, nor until an affidavit shall have been filed as above directed." Referring to the affidavit that the capital of the special partner "had been actually and in good faith paid in cash." Is a false affidavit for that purpose better than none? Is a confessedly false affidavit any substantial compliance with the statute? Would not the defendant be estopped from setting up his

own wrong—the filing of a false affidavit—to shield him from the liabilities of a general partner? A person puts in property instead of cash, estimated by the parties at $10,000 cash, but worth or would sell for cash for not more than one-third of that sum, yet the affidavit and papers, on their face, comply with the statutory requirements, and he claims to be a special partner to $10,000, and it is so published in the newspapers. He is thus made a partner, interested in the profits and losses of the concern, but can he set up his own wrong in such case and claim with any plausibility that he is a special partner? I think not. To allow it would be to sanction and encourage fraud. This case has no analogy to cases of corporations, where provision is sometimes made by statute that the filing of a certificate shall be conclusive evidence of compliance with the statute, so as to constitute a corporation; or where it is made a corporation by the filing of a certain certificate. There it has been held, and properly, that the corporation is formed and exists until declared otherwise by a direct proceeding for that purpose. That it cannot be questioned except in that way. The principles applicable to these cases are not different from those pertaining to the case here.

But we are not left to reasoning and argument, upon this point. The statute declares, in terms, that "if any false statement be made in such certificate or affidavit, all the persons interested in such partnership shall be liable" (for what?) "for *all* the engagements thereof, as general partners." I am unable to perceive how the legislature could have spoken in plainer or more comprehensive terms. Not having complied with the statute, the defendant is not a special partner, in any sense or degree; neither as to the duration of the partnership nor any thing else. If not, then the act as to special or limited partners has nothing to do with him. It cannot be claimed that the defendant would be any sort of a special partner, in whole or in part; that he would be half a special partner by having his liability

Haviland *v.* Chace.

limited as to time, but a general partner in all else. The act intended no such anomaly. It is claimed, however, on the alleged peculiar language of this section, that the defendant's liability is limited to the proposed term of the special partnership, and cannot extend beyond. In other words, that he is made in that respect a special partner—a half or a third special partner—and as to the other half or two-thirds he is a general partner. But let us look at this language a little more closely. All the persons interested in such partnership shall be liable for all the engagements thereof as general partners. This surely included all the contracts and liabilities, but of whom, or of what? All the persons interested in such *partnership* shall be liable for all the engagements *thereof;* that is, plainly, of such partnership. How long does that partnership continue? Until it is dissolved according to law, and proper notice given of such dissolution to those who have been dealing with the firm. It is not dissolved, nor does it terminate, by or according to the original terms of partnership, any more than if it had been in terms, a general partnership; because, having failed to comply with the law, it never became a special partnership, and the shield of the act in relation to special partners is not over it. The engagements "thereof" are the engagements of the partnership, so long as it has a legal existence. How and to what extent shall they be liable for such engagements? They shall be liable "as general partners." This is the plain purpose of the law. I have already alluded to the general object of the statute—that if its several provisions were not complied with, the partnership should be general and not limited. This is declared in some six or seven sections, but in scarcely any two in precisely the same language, and in none more explicitly and fully than in the 8th section. In the 9th section it is declared "the partnership shall be deemed general." In the 11th section "such partnership shall be deemed a general partnership;" adding the word *partnership*. In the 13th section "he shall be deemed a

general partner." The same language in the 17th section. In the 22d section "shall be *liable* as a general partner." It is not judicious to attempt by ingenious refinement to discover some deep hidden meaning in a statute, not apparent and palpable in its plain reading. Again, section eleven provides for a renewal of a special partnership, in the same manner as its original formation, requiring the same thing as required by the 8th section now under consideration, and that declares, in terms unlimited and unqualified, that if otherwise renewed "the partnership shall be deemed a general partnership." This is the same case, the same principle as in section eight, and the same reason for it. · Where the liability is to be specially limited, it is plainly and expressly stated, as in section twelve.

In some provisions as to liability we have to look to the statute alone for its extent; as where the special partnership is wholly formed and a penalty or liability is imposed for violating some of its provisions as to the conduct of the special partner, that he must not interfere in the general business &c., as in section seventeen, failing to comply with the provisions. But here, in section eight, the special partnership is never formed—the vital part thereof, the cash, was never in. It is scarcely to be believed that the legislature intended to treat the latter case with less rigor than the former.

In every view I can take of this case, of the law of partnerships, of the true construction of this statute, both from its plain terms and its general purpose, as well as from principles of public policy, I am of opinion that the defendant is liable as a general partner, without limit as to time, except as before expressed; and hence the judgment must be reversed and a new trial granted, with costs to abide the event.

HOGEBOOM, J. concurred.

New York Central R. R. Co. *v.* Saratoga and Schenectady R. R. Co.

GOULD, J. (dissenting.)   Though no special partnership was formed, the printed notice (which was *all* the notice the plaintiffs had of any such partners, the special partner not being named in the business,) gave to the plaintiffs notice that the partnership, (whatever it was, general or special,) would *cease* on such a day.   And the debt in suit was contracted *after* that day.    So that the plaintiffs had notice that it was not a partnership debt.    This is the whole basis of my views that a new trial should not be had.

New trial granted.

[ALBANY GENERAL TERM, September 3, 1860.   *Gould, Hogeboom* and *Peckham,* Justices.]