## NEW YORK COMMON PLEAS.

CHARLES A. BUCKLEY and others agt. GEORGE P. LORD, SAMUEL N. BROWN, ABIEL B. MARKS and EDMUND C. BRAMHALL.

Where a person under a *private agreement* with a *special partner* in a limited copartnership furnishes a certain portion of the capital which the special partner puts into the business of the firm in his own name, and is to have a certain portion

Buckley agt. Bramhall.

of the income or profits which the special partner derives from the business, with a privilege of examining from time to time into the business matters of the firm, he and the special partner become thereby *general partners*.

They are made so by the operation of the statute, which declares that all persons interested in the partnership shall be liable as general partners, if any *false statement* is made in the *certificate* or *affidavit* by which the limited copartnership is formed.

A *published notice* of a *limited partnership* does not operate under the statute as an *actual dissolution* until *four weeks* after the publication.

*General Term, March,* 1863.

DALY, BRADY and HILTON, *Judges.*

APPEAL from a judgment at special term. The facts will appear in the opinion of the court.

C. BAINBRIDGE SMITH, *for plaintiffs.*
BENEDICT & BOARDMAN, *for defendants.*

By the court, DALY, F. J.   On the 31st of December, 1860, the defendants Lord, Brown and Marks entered into an agreement for the formation of a limited copartnership, to commence on the first of January following, and to continue for four years thereafter, of which Lord and Brown were to be the general partners and Marks a limited partner; Lord to contribute $5,000, Brown $1,000, and Marks $20,000 in cash; and on that day the certificate and affidavit required by the statute was filed to the effect that Marks had contributed the sum of $20,000 as special partner, and that the same had been actually and in good faith paid in to the common stock in cash.   The usual notice was published, and at the time designated the parties commenced business.   Brown did not contribute the $1,000, having been disappointed in obtaining it, and Lord contributed but $3,000 instead of $5,000.

Eight thousand dollars of the $20,000 paid in by Marks was received from the defendant Bramhall.   Bramhall was an old acquaintance of Lord and of Marks, and shortly before the formation of the partnership he introduced Marks to Lord.   Lord, who was examined as a witness, testified that Bramhall told him previous to its

Buckley agt. Bramhall.

formation, after he had introduced Marks to him, and while negotiations were pending for the formation of the partnership, that he had agreed to take an interest with Marks in the business, and had agreed to do so for the purpose of assisting Lord, and that Lord must keep it strictly private; that he was to contribute $8,000 of the $20,000 that Marks was to furnish, and was to receive two-fifths, and Marks three-fifths of the profits resulting from advancing the $20,000 capital contributed by Marks; that he had a written agreement between himself and Marks in regard to his interest, drawn up by Mr. Board-man, the defendant's attorney, and that the agreement was so drawn that in case Marks should, by any action of his, make himself liable as a general partner, he, Bram-hall, would be entirely exempt from liability; and that he had Marks tight; that he requested that his interest in the business should be kept strictly private, and said that the object in so arranging matters was to enable him to advise and assist the firm more than could be done in a limited copartnership under the laws of New York; that the law relating to special partnership was so strin-gent that the special partner could hardly go into the store without making himself liable as a general partner, and that by this arrangement he could advise with and assist the firm.

There was a clause in the articles of copartnership in these words: "As a matter of courtesy to Mr. E. C. Bram-hall, of Jersey City, for the interest he has manifested in the welfare of this copartnership and his assistance in the advancement of its interests, we invite him, at all times, or at such times as may suit his convenience, to examine into our business affairs." Lord testified that when he saw the clause in the article of copartnership he objected to it as unnecessary, and Marks answered that he, Lord, knew that Bramhall had an interest, and that he had desired that article to be inserted. Lord testified further

that after the copartnership was formed Bramhall told him that he had contributed $8,000 of the $20,000 capital furnished by Marks, and that he was to receive from Marks two-fifths of all that Marks received from the firm; and he requested that in giving the notes of the firm as dividends of profits, that they should be so drawn as that he might receive his share of them without waiting until they had become due; that he was to receive two-fifths of all that Marks received, whether he received it as interest or capital, or as dividends of profits, or as dividends of the capital at the time when the copartnership should terminate. Lord also testified that Marks knew of Bramhall having an interest or share in the profits of the firm; that he knew of it from Bramhall before the copartnership articles were signed, and that he introduced the article before referred to, so as to allow Bramhall to have a supervision over his interest; that Marks frequently told him that Bramhall owned a share of his interest in the business.

It appeared that an agreement in writing was executed between Bramhall and Marks, bearing date the third day of January, 1852, two days after the copartnership was to commence, by which it was agreed, in consideration of $8,000 received by Marks from Bramhall, that Marks would account for and pay over to Bramhall two-fifths of all sums of money, securities, or evidence of debt or other property, during the continuance of the copartnership, which Marks might receive therefrom as interest, profits or increase, and two-fifths of all that he might receive on the winding up thereof, Marks agreeing to account to Bramhall for two-fifths thereof, the same as if he, Bramhall, was a special partner in the house by the investment of the said sum of $8,000; but that Marks was not to be liable to Bramhall beyond two-fifths of all he received from the firm, in any event.

Admitting this state of facts to be true, it is apparent

that the whole arrangement was a flimsy contrivance to evade the statute, a device by which Bramhall meant to secure all the benefits of a limited copartnership to the extent of $8,000, with a more active interference in the business of the firm than the law will allow, without becoming responsible as a general partner. This is apparent from the written agreement between him and Marks, and from the insertion of the clause before referred to in the article, which Marks himself testified was inserted "simply because Bramhall was a good business man and could advise with Lord." This agreement operated as a transfer of two-fifths of Mark's interest, not only of the profits but of the capital invested by him. By the language of the agreement, he was to have everything that he could have had as a special partner investing $8,000, and, upon a dissolution, he would have been entitled to claim that interest. Having been transferred to him by Marks, the other partners would have been bound to pay it over to him. He could not become a special partner without complying with the provisions of the statute. As a special partner, he would have had the right from time to time to examine into the state and progress of the partnership concerns, and to advise as to their management. (2 R. S., 51, §17, 3d ed.) He sought to secure the right and all the benefit of a special partner without becoming one, and thereby made himself a general partner. He is made so by the operation of the statute, which declares that all persons interested in the partnership shall be liable as general partners if any false statement is made in the certificate or affidavit by which the limited copartnership is formed. (1 R. S., p. 765, §§7, 8.) The statement in the certificate and affidavit was that Marks had contributed $20,000 of the capital. By Lord's testimony, $8,000 was contributed by Bramhall, with an understanding and under an arrangement by which he was to have all the benefit of a special partner without

becoming one. Such is the legal effect of the written agreement between him and Marks. Such was the understanding of Lord both before and after the copartnership was formed; and though Brown, the other general partner, testifies that he knew nothing of it, the arrangement was carried out by the firm for three years, the notes for profits and interest on capital being drawn, as Bramhall had suggested, for two-fifths and three-fifths. This was proved by the defendants' witnesses. The clerk of the firm, Clusman, and the defendant Marks, testified that all the notes received by Marks were divided up in this way, and this is a fact with which Brown, as a general partner, is chargeable with the knowledge of. Lord conducted the financial business, but in his absence it was attended to by Brown. It was a matter which Brown could have known. It would appear upon the payment of the notes, and if he did not know it, it must be deemed to have been done with his assent. The fact that the $8,000 was in reality invested in the firm for the benefit of Bramhall, rendered the statement in the affidavit that it was contributed by Marks untrue, and the effect of this false statement was to make Bramhall and Marks general partners.

Both Bramhall and Marks denied that they had made the statements sworn to by Lord. They, however, contradict each other, and are in turn contradicted by the agreement. Marks swore that he borrowed the $8,000 from Bramhall. The agreement shows that it was not borrowed; that it was not a loan in any sense, which is an agreement to repay a sum received, with interest, if it is retained beyond the time when it is payable back. So far from being a loan, it was to be used in merchandising, and Bramhall was to receive all the profit that might grow out of its use in that way as part of the capital of a mercantile firm. Bramhall swore that he told Marks that he would loan him the $8,000 with the understanding that he could, if he so desired, have the privi-

lege of taking two-fifths of what Marks should receive from the business of the firm in lieu of the $8,000; that he finally concluded to avail himself of that privilege, and that the arrangement was made when he entered into the written agreement; that was according to its date, on the 3d of January, 1852. Marks swore that, about the time of the formation of the partnership, Bramhall told him that he could loan him $8,000 for a time, but could not spare it from his business permanently; that it was finally left at his option that he might take two-fifths of what Marks should receive, or have the $8,000 repaid to him; and that, finally, in the summer following, they made a definite agreement that Bramhall was to have two-fifths of all profits; and in the last statement he is contradicted, both by Bramhall and by the agreement; in addition to which, the testimony of Marks throughout, and that of Bramhall to a certain extent, was evasive and shuffling.

So far, therefore, as the testimony of these witnesses was in conflict with the statement of Lord, it was for the jury to decide which they would believe; and as the judge left it to the jury to find as a question of fact whether Bramhall was interested in the partnership at the time of its formation, and the jury having found that he was, they must be regarded as having pronounced in favor of the truthfulness of Lord.

The special partnership could not be dissolved by the act of the parties until four weeks after the publication of notice of the intended dissolution, (*Beers* agt. *Reynolds*, 12 *Barb.*, 288; 1 *Kern.*, 100,) which in this case would be on the 17th of September, 1854. Before that time Marks withdrew all his capital by the transfer to him of certain interests, profits and notes which the statute forbids. (1 *R. S., p.* 766, § 15.) He had nothing in the firm after the 14th of August, 1854. He could not by that act terminate his limited copartnership, but continued liable

until the actual dissolution—that is, until the 17th of September, 1854—for all engagements which the firm might make in the prosecution of their business up to that time. One of the notes in suit was given for merchandise sold to the firm on the 18th of August, 1854, and for the payment of that note he is liable. He is liable upon that as well as upon the note given on the 19th of March, 1854, as a general partner, by reason of the false statement in the certificate and affidavit as to the amount contributed by him to the capital stock.

The answer as to the purpose of Bramhall's visit to the store was properly allowed. The witness spoke as to a general fact which he might well know. The same remark applies to the answers to the fifth and sixth interrogatories; the witness answered as to facts within his knowledge. The answers to the forty-eighth, fifty-third, fifty-seventh, fifty-ninth, sixtieth and forty-third cross-interrogatories in the last depositions read were all properly excluded. The testimony was totally irrelevant, and had no bearing upon the questions under consideration. There was no positive evidence that the plaintiff had received actual notice of the intended dissolution. The boy who served the circulars could remember but a few of the firms with whom they were left. The plaintiff Buckley admitted that he had seen circular, but could not recollect whether he had received a copy of it in August, 1854, or not, and that he did not recollect whether, when he sold the goods, he knew of the dissolution or not.

Marks and Bramhall, to be released from liability as general partners for the debt incurred by the sale of the goods on the 18th of August, 1854, were bound to show that the plaintiffs had notice of the dissolution before that sale; and there was no positive evidence that they had.

The published notice, moreover, was of the dissolution of a limited partnership, which did not operate under the

statute as an actual dissolution until a month after this sale was made, and persons dealing with the firm had a right to rely upon the continuance of the partnership until the dissolution, as the notice expressed it, took "effect according to law." (*Beers* agt. *Reynolds*, 12 *Barb.*, 291; 1 *Com.*, 100.) The amount of the notes and the interest having been admitted by the counsel for Marks and Bramhall, there was no occasion for an assessment of the amount due.

The judgment should be affirmed.