MARK H. CREHAN, Respondent, v. RALPH G. MEGARGEL
and Others, Defendants, Impleaded with CORRINE BAILEY
and Others, Appellants.

MARK H. CREHAN, Respondent, v. RALPH G. MEGARGEL
and Others, Appellants, Impleaded with JACOB ABRAMS
and Others, Defendants.

MARK H. CREHAN, Respondent, v. RALPH G. MEGARGEL and
Others, Defendants, Impleaded with WILLIAM J. ROSER and
Another, Appellants.

First Department, January 20, 1922.

Partnership — limited partnership — action based on violation of
Partnership Law, § 34, to hold as general partners contributors
to trust fund to be invested by trustee personally as special partner
in limited partnership — contributors to trust fund not " persons
interested " within meaning of statute and not liable as general
partners though statute violated — trust not invalid as suspend-
ing power of alienation — foreign judgments — Massachusetts
judgment against some of partners bars action in this State
against others in absence of proof of statute in Massachusetts
similar to Code of Civil Procedure, § 1946, permitting subsequent
action against partners not sued — constitutional law — giving full
faith and credit to judgment of foreign State.

The contributors to a trust, by the terms of which the trustee was to invest
the fund in his own name and as his sole and individual special capital
in a limited partnership to be formed under the laws of this State,
which provided that the contributors should have no right of accounting
or other rights whatsoever against the partnership but should be strangers
thereto, and should look only to the trustee except in the event of dis-
solution of the partnership on the death of the trustee, are not " persons
interested " in the special partnership in which the fund is invested by
the trustee as a special partner, within the meaning of section 34 of the
Partnership Law, providing, in effect, that the " persons interested " in
a limited partnership shall be liable as general partners if any false
statements are made in the certificate or affidavit made either upon the
formation or renewal of the partnership, or if any such certificate or
notice is not published as required by law; the words " persons interested "
as used in said section obviously only refer to those who are the parties
to the limited partnership agreement.

The said trust instrument was not invalid as offending against the law of
perpetuities, for the reason that the death of the trustee would result in

a dissolution of the copartnership and, therefore, in the termination of the trust during the period of a single life.

The plaintiff recovered a judgment in the State of Massachusetts against all of the partners, with the exception of the partner who was the trustee, on the same cause of action, and, in the absence of any proof that Massachusetts has a statute similar to section 1946 of the Code of Civil Procedure providing, in effect, that under certain conditions where one or more partners have not been joined as defendants in the action upon a partnership liability they may be subsequently sued in another action, the courts of this State must assume that the common-law rule that the effect of a judgment against some of the partners on a partnership liability is to merge the original debt in the judgment prevails in Massachusetts, and so the Massachusetts judgment is a bar to this action under the full faith and credit clause of the United States Constitution by which the courts of this State are required to give full effect to the judgment entered in Massachusetts in accordance with the law of that State.

APPEAL by the defendants, Corrine Bailey and others, from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 20th day of May, 1921, denying defendants' motion for judgment on the pleadings dismissing the complaint herein, and also from an order entered in said clerk's office on the same day overruling the demurrer interposed by the defendants to the complaint herein.

Appeal by the defendants, Ralph G. Megargel and others, from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 20th day of May, 1921, overruling the amended demurrer interposed by the defendants to the complaint herein.

Appeal by the defendants, William J. Roser and another, from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 20th day of May, 1921, overruling the demurrer interposed by the defendants to the complaint herein.

The demurrers of two of these groups are based upon the insufficiency of the complaint and defect of parties. The third demurrer rests upon the same grounds and the additional one of misjoinder of causes of action. The three appeals were considered together.

*Greene & Hurd* [*Richard T. Greene* of counsel; *Daniel S. Murphy* with him on the brief], for the appellants Corinne Bailey and others.

*Powell, Wynne & Roberts* and *N. J. Herrick* [*Clinton J. Ruch* of counsel; *N. J. Herrick* and *John M. Lowrie* with him on the brief], for the appellants Ralph G. Megargel and others.

*J. Boyce Smith, Jr.,* of counsel [*Sydney R. Wrightington* with him on the brief], for the respondent.

GREENBAUM, J.:

The complaint sets up four separate causes of action upon differing theories, for damages alleged to have been sustained by reason of the breach of a contract between plaintiff and the copartnership of Megargel & Co. The first cause of action is predicated upon section 1946 of the former Code of Civil Procedure and section 34 of the Partnership Law (Laws of 1909, chap. 44; now Laws of 1919, chap. 408, § 94), upon the plea that a limited copartnership was illegally formed, thereby making the special partner as well as those whom he represented liable as general partners and that the contract was a Massachusetts one, controlled by the law of that State " as regards the existence and the nature of the cause of action thereon and the theory and extent of the liability."

The second cause of action alleges generally that the defendants were copartners with the general partners under a contract governed by the laws of Massachusetts.

The third cause of action is similar to the first, excepting that it is based upon the theory that the contract between the plaintiff and partnership was a New York and not a Massachusetts contract and is governed by the law of this State.

The fourth cause of action is framed on the theory of a common-law liability under New York law without regard to a statutory liability under the law of this State.

The defendants in the action are Ralph G. Megargel and sixty-five other persons who paid over to Ralph G. Megargel

First Department, January, 1922.            [Vol. 199

moneys under a trust agreement to be invested in the special partnership in question.

The general partners under the special partnership agreement were Roy G. Megargel, Charles N. Jones, Frank B. Erwin, Christopher F. Coombs, Clarence W. Byram, Stephen S. Strattan and Michael J. Murphy. These general partners are not parties to this action.

The complaint alleges that a certain certificate of a limited partnership to be conducted under the name of " Megargel & Co." was filed in the office of the clerk of the county of New York on January 5, 1916, a copy of which is annexed; and that the certificate contains false statements in that " the sum of one million dollars specified therein to have been contributed to the common stock of said alleged limited partnership by Ralph G. Megargel had not been actually and in good faith paid in cash at or prior to the time of the filing of such certificate and, second, in that Ralph G. Megargel named therein as special partner was not the person by or for whose benefit the said amount of capital of one million dollars or any part thereof was actually and in good faith contributed, and third, in that at or prior to the time of the filing of such certificate there were other persons than those mentioned and stated therein as general and special partners who were interested in such partnership and who had contributed sums in actual cash payments as capital to the common stock of said partnership."

It is further alleged that of " said sum of one million dollars not to exceed $700,000 had been actually and in good faith paid into the common stock of said alleged partnership of Megargel & Co. in cash at the time of the filing of said certificate; " that prior to January 5, 1916, the defendant Ralph G. Megargel as so-called trustee and each of the other defendants above named with the exception of seven of them (specifically named) duly signed and executed as subscribers a certain written instrument or indenture dated June 1, 1915, a copy of which together with copies of the form of receipt and articles of partnership referred to therein is hereto annexed and made a part hereof and marked Exhibit B; that " prior to January 5th, 1916, more than $500,000 had been subscribed under said indenture ' Exhibit B,' and

said defendants who signed and executed said indenture as 'Subscribers' as aforesaid subscribed and paid * * * various sums of not less than $1,000 each to defendant Ralph G. Megargel as so-called 'Trustee' thereunder;" that the subscribers duly received receipts in the form annexed to Exhibit B for the amount subscribed and paid by them respectively; that the defendant Megargel "paid over the aggregate sum of the amounts subscribed and paid to him as so-called 'Trustee' * * * to said alleged limited partnership of Megargel & Co. * * * and a large part, to wit, more than $250,000 of a total of $1,000,000 subscribed under said indenture 'Exhibit B' was subscribed in the name of said firm of Megargel & Company or in the name of the persons named as general partners in said certificate 'Exhibit A.'"

It is further alleged that Exhibit B was not filed in any public office or otherwise published; that the trust attempted to be created by Exhibit B is invalid under the laws of this State and that the defendant Megargel had no legal title to the moneys subscribed and paid to him as so-called trustee; that the " alleged trust is an unlawful, secret and ineffectual device to evade the law regulating the formation of limited partnerships;" that the defendant subscribers " were and each of them was interested in said alleged limited partnership of Megargel & Company " and were together with the named seven general partners who are not parties to this action, " copartners and general partners of the firm of Megargel & Company;" that the said firm started business as stock and bond brokers on January 5, 1916, with its principal office in New York city and in or about January, 1916, opened a branch office in the city of Boston, Mass.; that the plaintiff at all times mentioned in the complaint was and is a citizen and resident of the State of Massachusetts; that from April, 1916, to December, 1916, the partnership of Megargel & Co. maintained a branch office in the city of Boston in the State of Massachusetts.

The complaint further alleges that the plaintiff entered into the making of an agreement with Megargel & Co., whereby the latter undertook to handle plaintiff's marginal accounts for the purchase and sale of stocks and bonds and other securities; that on April 12, 1920, plaintiff recovered a judgment in the Superior Court of Massachusetts in the sum

First Department, January, 1922. [Vol. 199

of $647,954.80 against all of the members of the firm of Megargel & Co., excepting Ralph G. Megargel, as damages for the breach of said contract.

In pleading the facts leading up to the entry of the Massachusetts judgment, the plaintiff sets forth the law of the State of Massachusetts as follows: "That the legal title to securities carried on margin by a stock broker for a customer is in the broker, as between him and the customer, and this is true alike of securities bought on margin through the broker, securities deposited by the customer as margin and securities taken over by the broker upon the transfer of the account of the customer from another broker; that the customer cannot maintain an action of tort for conversion but if the broker fails to carry the securities standing to the credit of the customer's account or fails to actually execute the customer's orders to buy or sell securities so long as the customer's margin is good the customer may recover in an action in contract the cash deposited by the customer as margin with interest thereon."

It is also alleged in the complaint that none of the above-named defendants were at the time of the commencement of the Massachusetts action residents of the State of Massachusetts or had any property in that State and that moreover at the time the said action was commenced plaintiff "had no knowledge that the above named defendants were general partners or of the facts making them or any of them liable as general partners."

The trust indenture annexed to the complaint provides for the payment on the part of the subscribers to the trustee of the amounts set opposite their respective names, to be held by him in trust and to invest the aggregate principal sum "by contributing the same and all thereof in his own name and as his sole and individual special capital to a limited or special partnership to be formed under the laws of the State of New York for the purposes and upon the terms and conditions set forth in the proposed articles of partnership hereto annexed," being a copy of the articles of copartnership between the defendant Ralph G. Megargel, the special partner, and Roy Megargel and six others, as general partners.

The trust agreement also provides that the money con-

tributed by the trustee as special capital " shall be subject in all respects to the debts of said partnership " and " the subscribers  *  *  *  shall have no right of accounting or other rights whatsoever against the said partnership, but shall, in all respects, be strangers thereto and, as regards the trust property and estate or any of the rights and interests guaranteed them thereby, shall look only to the party of the second part or his legal representatives; excepting only in the event of the dissolution of said partnership  *  *  * "  by the death of the defendant Ralph G. Megargel and the termination of the trust, the subscribers are to be entitled to receive from the survivors of the partnership the amount of the special capital that may remain after final liquidation. It further provides for the issuance of receipts by the trustee to the subscribers, the method of assignment thereof and that the trustee upon the receipt by him of any interest or profits to which he may be entitled as special partner, shall deposit the same with the Metropolitan Trust Company for distribution by it among the registered holders of such trust receipts.   It also recites that the trustee shall have the sole legal title to the special capital contributed by him, and that he shall faithfully, fully and duly observe the statutes of New York governing special or limited partnerships and the duties and obligations of special partners.

The plaintiff contends that the defendant subscribers were " persons interested " in the partnership of Megargel & Co., within the meaning of section 34 of the Partnership Law (Laws of 1909, chap. 44).   That section provides as follows:

" § 34.  Effect of false statements or failure to publish terms.   If any false statement be made in any such certificate or affidavit, made either upon the formation or renewal or continuance or increase of capital of such partnership, or if any such certificate or notice is not so published, or if such partnership be renewed or continued in any other manner, the persons interested therein shall all be liable as general partners."

In view of the allegations in the complaint that there was a false statement filed upon the formation of the firm of Megargel & Co., the defendant Ralph G. Megargel must upon demurrer be deemed to be a " person interested " in the partnership and hence liable as a general partner.   A different

situation, however, exists with respect to the other defendants who were subscribers under the trust indenture or who became holders of the trust certificates or receipts by assignment or otherwise.

Section 34 of the Partnership Law (Laws of 1909, chap. 44) was taken without change from the Partnership Law of 1897 (Chap. 420), the latter having been revised from the Revised Statutes (Pt. 2, chap. 4, tit. 1 [1 R. S. 765], §§ 8, 9, 11) which provided as follows:

" § 8. No such partnership shall be deemed to have been formed, until a certificate shall have been made, acknowledged, filed and recorded, nor until an affidavit shall have been filed, as above directed; and if any false statement be made in such certificate or affidavit, all the persons interested in such partnership, shall be liable for all the engagements thereof, as general partners.

" § 9. The partners shall publish the terms of the partnership when registered, for at least six weeks immediately after such registry, in two newspapers, to be designated by the clerk of the county in which such registry shall be made, and to be published in the senate district in which their business shall be carried on; and if such publication be not made, the partnership shall be deemed general.     *     *     *

" § 11. Every renewal or continuance of such partnership, beyond the time originally fixed for its duration, shall be certified, acknowledged and recorded, and an affidavit of a general partner be made and filed, and notice be given, in the manner herein required for its original formation; and every such partnership which shall be otherwise renewed or continued, shall be deemed a general partnership."

It will be observed that under the provisions of sections 8, 9 and 11, it is separately and variously stated that if there is a non-compliance therewith the partnership shall be deemed a general partnership. Under the Laws of 1897 and the Partnership Law (Laws of 1909, chap. 44), the effect of failure to comply with the requirements of the Partnership Law (Laws of 1909, chap. 44) is expressed in one section, *i. e.*, section 34.

The special partnership certificate which was filed in this case was signed by Ralph G. Megargel, individually and not as trustee. It seems to us that the words " persons interested "

as used in section 34 obviously only refer to those who are the parties to the special partnership agreement.

The Court of Appeals has in a number of cases explained the objects and purposes of the Limited Partnership Act. In *White* v. *Eiseman* (134 N. Y. 101, 103) VANN, J., writing for the court, said: " The primary object of the act authorizing limited partnerships was to encourage those having capital to become partners with those having skill, by limiting the liability of the former to the amount actually contributed to the firm. The next and incidental object was to furnish reasonable protection to those dealing with the concern by requiring certain acts to be done and public notice thereof given, so that all who desired might know the essential features of the arrangement. In order to prevent evasion and fraud, it was provided that any false statement in the certificate or affidavit should render *all the partners equally liable*. [Italics ours.] That provision, however, was not designed as a trap to catch the innocent and unwary, but as a bar to shut out the dishonest and fraudulent. While the courts were at first inclined to a strict construction against those thus seeking exemption from the common-law liability of partners, the tendency in this State is now toward a liberal construction, so as to accomplish the wise purpose of the act by uniting capital and labor in business enterprises, without excessive hazard to the former. [Citing authorities.]

" The more recent cases regard the statute as remedial in nature, and, looking to substance rather than form, protect those who in good faith substantially comply with the essential requirements."

In saying that " any false statement " rendered " all the partners equally liable," the court in the opinion just quoted impliedly held that the persons to be held liable in the enterprise mentioned were those named in the partnership agreement and that they were the " interested parties " described in the statute.

In *Buck* v. *Alley* (145 N. Y. 488, 494) the court construed the provisions in the Revised Statutes and stated: " The 8th section declares that if any false statement be made in the certificate or affidavit required to be filed on the

organization of the partnership ' all the persons interested in such partnership shall be liable for all the engagements thereof as general partners.' The cases of *Van Ingen* v. *Whitman* (62 N. Y. 513) and *Durant* v. *Abendroth* (69 id. 148) were founded on a violation of this section. Section 9 declares a similar penalty if the publication of the terms of the partnership shall not be made as required thereby, and the special partner was held liable for a non-compliance with this section in *Smith* v. *Argall* (6 Hill, 479) which was affirmed on error (3 Den. 435), the court saying: ' The consequence is declared in plain terms: " the partnership shall be deemed general." ' The 11th section, which prescribes the manner of renewing or continuing a limited partnership, declares: ' And every such partnership which shall be otherwise renewed or continued, shall be deemed a general partnership.' Section 12 provides that every alteration ' made in the names of the partners, in the nature of the business, or in the capital or shares thereof, or in any other matter specified in the original certificate, shall be deemed a dissolution of the partnership; and any such partnership, which shall in any manner be carried on after any such alteration shall have been made, shall be deemed a general partnership, unless renewed as a special partnership, according to the provisions of the last section.' "

In *Haviland* v. *Chace* (39 Barb. 283, 287) PECKHAM, J., in construing the provisions of the Revised Statutes said: " I have already alluded to the general object of the statute — that if its several provisions were not complied with, the partnership should be general and not limited. This is declared in some six or seven sections, but in scarcely any two in precisely the same language." The court then refers to each of the sections and in effect holds that they indicated that the special partner was to be held liable as a general partner, for failure to observe the provisions of law enumerated in the act.

In *Loomis* v. *Hoyt* (52 N. Y. Super. Ct. 287, 295) the court said: " Section 8 of the statute expressly says that in such a case no limited partnership shall be deemed to have been formed, and that all the persons interested in such partnership shall be liable for all the engagements thereof as general

partners. There is a mere re-enactment of the common law doctrine upon the subject. The question seems to have been carefully considered by the Supreme Court in *Haviland* v. *Chace,* 39 Barb. 283.''

It is difficult to understand how it may be fairly argued that the Legislature could have had in mind persons other than those who were named as parties to a limited copartnership when it referred to " persons interested." The creditors of a special copartnership are not concerned with the personnel of the special copartnership, inasmuch as the latter are not permitted to participate in the management of the business and where indeed such participation would render them liable as general partners. All that the creditors are interested in so far as the special partner is concerned is that the amount agreed to be contributed as special capital has in fact been paid in. It is a matter of absolute indifference to the creditors in what manner the special partner received his money so long as it was paid into the capital of the firm in accordance with the agreement. It is true that the subscribers were indirectly interested in the success of the business in which they had authorized the trustee to invest their funds as if they were his. But the Legislature could not have had in mind such an indirect interest since there are no words in the act which in the remotest way could be construed to refer to persons who may be interested in the partnership business through a personal agreement between one of the special or general partners and a third person affecting only the profits to which such individual partner may receive from the partnership. Under the trust agreement the subscribers had no right to make any demand whatsoever upon the partnership. The only time when such a right would arise would be in case of death or perhaps insolvency of the trustee, in which case the subscribers would have a right to protect their interest to the extent that the special partner might have after all the obligations of the creditors of the firm had been met. Under the trust agreement the legal title was vested in the trustee. It was expressly provided that he was to invest the funds subscribed " in his own name and as his sole and individual special capital;" and it also provided that " neither the party of the second part (meaning trustee) nor

the other members of the said partnership (meaning the general partners) shall be under any duty, liability or responsibility whatsoever to the subscribers for any of the acts, investments, purchases, losses or business transactions of the partnership."

The complaint alleges that the subscribers had not contributed $1,000,000 and that the amount contributed by them was apparently somewhat over $700,000. It also seems to allege that $1,000,000 had been paid into the capital of the copartnership but that the balance which made up the $1,000,000 was derived from other sources, namely, from the general partners. How can the subscribers be liable on that account to the creditors? If it be claimed that the trustee had no right to use any moneys for the special capital other than those contributed by the defendants and that such an act was a wrongful one on the part of defendant Megargel, we need only refer to the rule that a *cestui que trust* is not liable for an act done by a trustee in excess of his powers.

Respondent, however, relies upon the case of *Buckley* v. *Bramhall* (24 How. Pr. 455) in which the court held the defendant Bramhall liable as a general partner because he contributed $8,000 towards the $20,000 which the special partner paid into the firm as his contribution. It appears, however, that in that case the articles of copartnership provided as follows: "As a matter of courtesy to Mr. E. C. Bramhall of Jersey City, for the interest he has manifested in the welfare of this copartnership and his assistance in the advancement of its interests, we invite him, at all times, or at such times as may suit his convenience, to examine into our business affairs." In other words, we find in that case an express recognition of Bramhall in the copartnership agreement in the peculiar way which we have indicated and the testimony in the case convinced the court that this provision was put into the articles of agreement so that he, Bramhall, might have an opportunity to participate in the management of the business without making himself liable as a general partner, thereby evading the provisions of law that a special partner may not participate in the active management of the partnership. (R. S. pt. 2, chap. 4, tit. 1 [1 R. S. 764], § 3; now Partnership Law [Laws of 1919, chap. 408], § 97.) The court held in that case that the "whole arrangement was a

flimsy contrivance to evade the statute." The court did not hold Bramhall liable merely because a portion of the money contributed in the name of a special partner came from him, but because of his participation in the copartnership through the guise of a special partnership, designed to evade the law of limited partnership. There is not the slightest hint in the instant case of any intent on the part of the subscribers to evade the provisions of the Partnership Law.

In *Webster* v. *Lanum* (137 Fed. Rep. 376) the court quotes approvingly from *Lawrence* v. *Merrifield* (42 N. Y. Super. Ct. 36; affd., 73 N. Y. 590): " No part of the statute regulates the means which may be used by the special partner to obtain the money which he makes capital. If they be fraudulent or unlawful the remedy is not given by this statute, nor while the other demands of the statute are answered do these means injure the creditors or the other partners." The court then states: " From these decisions it appears that the circumstance that the special partner has derived the money which he has contributed to the partnership from one of the general partners is of no significance as tending to show ·that his contribution was not paid in good faith. What difference can it make whether he has borrowed it or received it in payment of an obligation. * * * But if it is of no consequence whether he borrows the money and thus becomes obligated to the lender in an equal amount, it cannot be of consequence whether his financial responsibility be large or small, and it must therefore be quite immaterial whether he be using his own money or money which in substance belongs to another." We are in complete accord with the views expressed in the *Lawrence Case* (*supra*).

The situation which here confronts us is quite analogous to that of a subpartner where " one who is not in fact a member of a firm and who has not held himself out as a member does not become liable for the firm's debts by reason of a contract which entitled him to divide with one of the partners, the latter's share of the firm's profits." (30 Cyc. 396; 22 Am. & Eng. Ency. of Law, 17; Burdick Part. [3d ed. 1917] 68; Conyngton Part. 45; *Burnett* v. *Snyder*, 76 N. Y. 344; 81 id. 550; *Rockafellow* v. *Miller*, 107 id. 507, 510.)

The respondent also contends that the trust indenture is

invalid because it offends the rule against perpetuities. We are of opinion that the rule has no application to such a transaction as this, and besides that there was no suspension of absolute ownership in the funds paid over to the trustee, in violation of law, for the sufficient reason, and without elaborating upon other reasons, that the death of the trustee would result in a dissolution of the copartnership and, therefore, .in a termination of the trust during the period of a single life.

Besides it is difficult to understand how the trust may be attacked collaterally by the plaintiff in this action.

The demurrers based upon the defect of parties defendant rest upon the proposition that if it be assumed that the defendants are general partners, then since the obligations of partners are joint (*Seligman* v. *Friedlander,* 199 N. Y. 373), all the partners must be joined as parties defendant, otherwise the complaint is demurrable for defect of parties. (*Third National Bank* v. *Graham,* 174 App. Div. 503.)

It appears here on the face of the complaint that the seven partners who signed the original agreement of copartnership are not made parties in this action and it is not affirmatively alleged that the parties are insolvent, dead or outside of the jurisdiction of the court. Plaintiff, however, relies upon section 1946 of the Code of Civil Procedure which provides as follows:

" § 1946. When partner not sued remains liable.— Where, for any cause, one or more partners have not been joined as defendants in an action upon a partnership liability, and final judgment has been taken against the persons made defendants therein, the plaintiff, if the judgment remains unsatisfied, may maintain a separate action upon the same demand, against each omitted partner, setting forth in the complaint the facts specified in this section, as well as the facts constituting his cause of action upon the demand."

That section was evidently enacted to overcome the strict common-law rule that the recovery of a judgment against less than all of the joint debtors merged the cause of action in the judgment, thus releasing the joint debtors who were not made parties to the action. (*Robertson* v. *Smith,* 18 Johns. 459.)

But the judgment set up in the complaint against the

original general partners is a Massachusetts judgment and it is well settled that where the effect of a judgment entered in a State is to merge the original debt in the judgment, the full faith and credit clause of the United States Constitution (Art. 4, § 1) requires a sister State to give full effect to the judgment in accordance with the law of the State in which the judgment was rendered.

Of course, this State has the right to change the common-law rule so that a judgment entered against one or more joint debtors may not bar the creditors from bringing a separate action against omitted joint debtors or obligors if the judgment remains unsatisfied, but such an enactment would only be binding upon judgments entered in this State and would not imply that it was the intention of the Legislature to abolish the rule of merger so far as foreign judgments are concerned. (Black Judg. [2d ed.] § 860; *Suydam* v. *Barber,* 18 N. Y. 468, 471.)

In the absence of proof that Massachusetts has a statute similar to our own, we must assume that the common-law rule there applies and that the causes of action asserted against the defendants were merged in the Massachusetts judgment pleaded in the complaint.

For the foregoing reasons the orders overruling the demurrers to the complaint must be reversed, with ten dollars costs and disbursements, and the plaintiff's motions must be denied, and the defendants' motion for judgment on the pleadings granted, with ten dollars costs.

CLARKE, P. J., LAUGHLIN, SMITH and MERRELL, JJ., concur.

Orders reversed, with ten dollars costs and disbursements, defendants' motion for judgment on the pleadings granted and plaintiff's motions denied, with ten dollars costs.