THE FIRST NATIONAL BANK OF CANANDAIGUA *v*, ELISHA D. WHITNEY and THOMAS B. WHITNEY, impleaded, &c.

(GENERAL TERM, FOURTH DEPARTMENT, JUNE, 1871.)

If, during the existence of a limited partnership, the special partner buys out the entire firm property, and continues the business in his own name, for his own account, he interferes with the firm business contrary to the provisions of section 17 of the act relating to limited partnerships (1 R. S., 764), and renders himself liable as a general partner.

The First National Bank of Canandaigua *v.* Whitney.

And the liability is not confined to subsequent debts, but he is liable as general partner *ab initio.*

It seems, that sections 20 and 21 of the act (1 R. S., 764) relate only to transactions intending a preference to creditors.

A simple indorsement of the principal's name upon a promissory note, made by an agent having authority, binds the principal as indorser.

THIS was a motion by the defendant, Elisha D. Whitney, for a new trial upon a case, and the exceptions ordered to be heard in the first instance at General Term.

The complaint was upon a promissory note for $1,024.65, made by the firm of "T. B. Whitney & Cohalen," to the order of Livonia A. Gulick, and bearing date at New York on the 26th February, 1868. Among other things, it alleged that the payee and defendant, Livonia A. Gulick, was, at the date of the note, the wife of one Egbert Gulick, having a separate estate in her own right, of which she still remained seized; also that she then and still carried on a separate business in her own name in the town of Starkey, Yates county. It also alleged that the defendants, Thomas B. and Elisha Whitney and Cohalen, were the partners in the firm of " T. B. Whitney & Cohalen," and that the defendant Livonia had, in the course of her separate business, received and indorsed the note to the defendant Munger, who indorsed it, before maturity, for value, to the plaintiff; that the note had been protested for non-payment, &c.

The defendants Whitney answered, each separately denying the liability of Elisha D. Whitney upon the note, and alleging that the firm of T. B. Whitney & Cohalen was a limited partnership, formed between T. B. Whitney and the defendant Cohalen, as general, and Elisha D. Whitney, as special, partners, under the provisions of the limited partnership act, and, among other defences, alleged that the note had never been indorsed to the plaintiff, which was not, therefore, the real party in interest in the action.

It was shown, with other evidence, upon the trial, that the indorsement upon the note of the name of Livonia A. Gulick had been made, not by her, but by Edgar Gulick, her husband,

who had written the same under authority as her general agent to make indorsements for her, though the authority was not in writing.

It was also shown that, on the 1st May, 1867, a limited partnership had been formed between the defendant, Thomas B. Whitney, and John Cohalen, as general partners, and Elisha D. Whitney, as special partner, in the brewing business, to continue for the term of three years, with a right of dissolution in any two of the partners, upon notice of six months to the other partner; that, in May, 1868, the entire real and personal estate of the firm had been transferred to the defendant, Elisha D. Whitney, and that the business was thereafter carried on by him in his own name and on his own account. The notice of dissolution, required by the articles of partnership, had not been given, and the transfer was made while the firm continued to carry on its ordinary business. The assets of the firm, at the time of the transfer, were abundantly sufficient to meet its liabilities, and Elisha D. Whitney assumed the payment of all the firm debts, except the note in suit, and the general partners became insolvent upon the transfer, and so remained.

Evidence was given upon other points in controversy in the case; but the court gave the following directions to the jury:

" The court thinks there is no evidence which tends to disprove the *bona fides* of the plaintiff's title to this note, and nothing which would warrant you in holding that the bank is not a *bona fide* holder of the note.

" This decision precludes all defence to the note, except as against E. D. Whitney. It appears he was a member of the firm as a special partner, under a special partnership arrangement, which has been proved; that it was made for three years; but that it might be dissolved on six months' notice. The court thinks there is evidence in the case that would constrain it to find, and make it your duty to find, that Mr. E. D. Whitney interfered with the business of the firm contrary to the spirit and intent of the act under which the special partnership was formed, particularly through the process of disso-

lution, or otherwise taking possession of the whole property, and going through the form of dissolution.

" The court is of opinion that this whole proceeding was a violation of the spirit and intent of the act, and deprives him of the rights of a special partner, and renders him liable to be held as a general partner for all the partnership debts, and, in that view, instructs you to give a verdict for the plaintiff for $1,132.76."

*George F. Danforth*, for the defendants.

*E. G. Lapham*, for the plaintiff.

Present — MULLIN, P. J., JOHNSON and TALCOTT, JJ.

By the Court — JOHNSON, J.  The principal question for consideration in this case is, whether the defendant, Elisha D. Whitney, became liable, as a general partner of the firm of " T. B. Whitney & Cohalen," for the debt in question.  He was a special partner, under the statute respecting limited partnerships.  The partnership was formed on the 1st of May, 1867, and was, by the terms of the agreement, to continue for the term of three years, but might be dissolved on six months' notice.  The general partners were Thomas B. Whitney and John Cohalen.  About the 6th of May, 1868, without giving the required notice, the entire capital and stock in trade of the partnership were sold, assigned and transferred to the defendant, Elisha D. Whitney, the special partner, who from that time continued and carried on the same business, at the same place, in his own name, leaving the demand in question unpaid.  The assignment and transfer embraced both the real and personal property of the partnership.  The partnership was not insolvent at the time of the assignment, but had abundant means for the payment of all its debts.  The general partners became insolvent upon the making of the assignment, and have so continued since.  These facts are undisputed in the case, or are rendered entirely clear by the evidence.  Partnerships of

this description are authorized and regulated by statute, and a special partner therein cannot be made liable as a general partner in the business of the concern, unless he has been guilty of violating some provision of the statute which may render him so liable. (1 R. S., 764.)

I do not see how, upon the facts of the case, the special partner can be made liable as for a violation of sections twenty and twenty-one of this statute. Section twenty-two declares that every special partner who shall violate any provision of either of these sections, or concur in or assent to any such violation, by the partnership or by any individual partner, shall be liable as a general partner. The sale and assignment in question do not seem to have been made with any view or intention of giving any preference to any creditor, either of the partnership or of any individual partner, over any one. There was no insolvency of the partnership, or, so far as appears, contemplated insolvency; and, although the general partners became insolvent upon making the assignment, and probably made it in contemplation of becoming insolvent, yet it does not appear to have been done with the intent of giving any creditor of the partnership, or of either of the partners, preference over partnership creditors. The object of the sale and assignment seems to have been to avoid the payment of the demand in question, and some others of like character, and defeat their enforcement and collection altogether from assets abundantly sufficient for the payment and satisfaction of all claims and demands against such partnership. This is wholly different from the intention specified in sections twenty and twenty-one.

Section seventeen of this statute provides, in regard to the extent to which a special partner may interfere in the business concerns and operations of the partnership, or participate therein. He may examine into their condition and progress, and advise as to their management. He may loan it money, and advance and pay money for it, and take and hold choses in action belonging to the partnership

to secure its payment. He may also become surety for the partnership, and have the same rights and remedies as any other creditor might have in such cases. He may also negotiate sales, purchases, and other business for the partnership, subject to the approval of a general partner, but not as agent or attorney of the partnership. The section then provides, " if he shall interfere contrary to these provisions, he shall be deemed a general partner."

Here it is manifest, beyond dispute or contradiction, that the special partner did interfere, " contrary to these provisions " of section seventeen. He put an end to the business of the partnership, and took title to the entire property and effects there of, real and personal, to himself, and took its business and carried it on in his own name and for his own exclusive benefit. If this is not an interference with the concerns and business of a partnership, by a special partner, it is difficult to conceive what would be interference. It was an act which not only terminated the existence of the partnership, but divested the general partners of all title to the partnership property and effects, and transferred it to another, to wit, himself.

The defendants' counsel insists that, even if this is to be regarded as interference, contrary to the provisions of the section, the effect would be only to render the special partner liable as general partner for transactions of the partnership occurring after such interference, and that the provision of the section should be so construed. But such a construction would be inconsistent both with the language and the manifest intention of the provision. " He shall be deemed a general partner," is the language of the provision, if he interferes " contrary to these provisions ;" that is, beyond, or in a manner different from, what he is there authorized to do. The unauthorized act or interference operates to convert him from a special into a general partner. It fastens that legal character or *status* upon him, and takes the other away. He is " to be deemed," in law, by reason of such interference, a general and not a special partner of that partnership ; not of a new partner-

ship, but of that one, from the beginning. This was the construction given to the provision in *The Madison County Bank* v. *Gould* (5 Hill, 309, 313), and it is, manifestly, the only true and consistent one. In a case of this kind, there are no transactions of the partnership, after the unlawful interference, to which the provision could be made applicable. The partnership is terminated by such interference. The plain design and intention were, to deprive the special partner of the shield and protection of his special character, as a penalty for his unauthorized acts. This view, if correct, disposes of the case upon the merits. Any other construction would place creditors of limited partnerships wholly at the mercy of the special partner. If the partnership is solvent, upon the construction contended for by the defendants' counsel all the special partner has to do to defeat the just claims of the creditors of the partnership is to buy the property and take the business from the hands of the general partners. If the general partners are rendered irresponsible by the sale and transfer, the creditors are deprived of their remedy. The law will never sanction such injustice, and the statute was evidently intended to guard against it and prevent it. The judge at the circuit was, therefore, clearly right in directing the jury to find a verdict in favor of the plaintiff, upon the undisputed facts of the case.

There is no merit in the objection that the plaintiff did not show a valid title to the note. It was indorsed in the name of the payee, and by her authority. It was not in her handwriting, nor did the person who wrote her name add his own as her agent. But that is not necessary to a valid transfer. It is enough that the person signing the name of the payee has authority to do so. (Chitty on Bills, 37, 38; *Pentz* v. *Stanton*, 10 Wend., 271.)

There was no charge to the jury; and all the questions raised upon requests and refusals to charge are of no consequence. The judge directed a verdict; and the only question upon that is, whether there was any question for the jury upon the plain facts of the case.

The case was properly disposed of, and a new trial must be denied, and judgment ordered on the verdict.

Judgment affirmed.