ESTATE OF GUY B. PANERO, DECEASED, ANNA MCCORMICK PANERO AND GUY ARTHUR PANERO, EXECUTORS, AND ANNA MCCORMICK PANERO, SURVIVING SPOUSE, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 1442–65.   Filed May 9, 1967.

*Joseph Lapatin,* for the petitioners.
*Agatha Vorsanger* and *Robert D. Whoriskey,* for the respondent.

FORRESTER, *Judge:* By his statutory deficiency notice the Commissioner determined a deficiency for the taxable year ended December 31, 1958, in the amount of $29,738.44. This asserted deficiency resulted from the disallowance of a claimed carryback loss from the period commencing January 1, 1961, and ending May 14, 1961, as to Guy B. Panero, deceased, and ending December 31, 1961, as to Anna McCormick Panero.[1]

The only issue before us is whether a partnership, of which Guy B. Panero was a member, had a taxable year which ended or closed with or within the last taxable year of Guy B. Panero, deceased, so that his share of the partnership loss might be claimed on petitioners' 1961 income tax return described above, thus creating a net operating loss carryback to 1958.

## FINDINGS OF FACT

This case is fully stipulated and such facts are so found. Those facts necessary to an understanding of the question which is presented are included herein.

Guy B. Panero, hereinafter called Guy, and Anna McCormick Panero, resided in New York City at all relevant times. Their joint income tax returns described above were filed at the office of the district director, New York City, N.Y. Anna McCormick Panero is a party only because of the joint filing, and the Estate of Guy B. Panero, deceased, will be referred to as petitioner.

Guy was the only general partner of the limited partnership, Guy B. Panero Engineers, which was organized under the laws of the State of New York on February 10, 1955, for the purpose of engaging in the practice of professional engineering. Relevant portions of the articles of such limited partnership are as follows:

WHEREAS, GUY B. PANERO is a licensed professional engineer and has been such since 1924, and is one of the leading experts in the field of mechanical engineering, and

*     *     *     *     *     *     *

WHEREAS, ALBERT M. LAUKAITIS, FRITZ KINDLER and ARTHUR W. B. REINHARD are licensed professional engineers and have for many years been employees of GUY B. PANERO and have competently performed their duties as such, and

*     *     *     *     *     *     *

WHEREAS, GUY B. PANERO is desirous of providing for the uninterrupted succession to his interest in [this] partnership by his sons, GUY ARTHUR PANERO and ROBERT PANERO, * * *

*     *     *     *     *     *     *

Now, THEREFORE, * * * the said parties do hereby mutually covenant and agree, each with the other, as follows:

---

[1] Guy B. Panero and Anna McCormick Panero had filed jointly for the calendar year 1958 and their 1961 joint return covered that calendar year as to Anna McCormick Panero and was for the short period ending with his death on May 14, 1961, as to Guy B. Panero.

FIRST: The parties agree to form and do hereby form a limited partnership pursuant to the provisions of Article 8 of the Partnership Law for the purpose of conducting the business and engaging in the practice of professional engineering in the City of New York.

SECOND: The said GUY B. PANERO shall be the general partner and the said ALBERT M. LAUKAITIS, FRITZ KINDLER and ARTHUR W. B. REINHARD shall be the limited partners in the partnership.

\*     \*     \*     \*     \*     \*     \*

FOURTH: The partnership shall commence as of the 1st day of January, in the year one thousand nine hundred and fifty-five and shall continue until the 31st day of December, in the year one thousand nine hundred and sixty-one.

\*     \*     \*     \*     \*     \*     \*

TENTH: Upon the termination or dissolution of the partnership, a full account of the assets and liabilities of the partnership shall be taken, the assets shall be liquidated and the proceeds applied as follows:

A. To the payment of the debts and liabilities of the limited partnership and the expenses of liquidation.

\*     \*     \*     \*     \*     \*     \*

FIFTEENTH: In the event of the death of GUY B. PANERO during the time fixed for the continuance of the partnership, the said partnership shall not thereby be dissolved, but, on the contrary, the partnership shall be continued as follows:

A.   GUY B. PANERO's interest in the partnership shall be held in trust by a licensed professional engineer theretofore designated by him in writing duly subscribed and acknowledged by him, whether in his will or otherwise, or designated by said Trustee or other legal representative of his estate, and said licensed professional engineer shall hold said interest in trust for the estate and shall succeed to the interest of GUY B. PANERO in said partnership without interruption as if said GUY B. PANERO had survived and shall in all manner and respect be deemed the general partner hereunder and the limited partners do hereby accept said Trustee or designee as general partner in this limited partnership \* \* \*

D. \* \* \*

(3) As soon as either one of the said sons of GUY B. PANERO shall become a general partner, as aforesaid, the person acting as Trustee and any designee, if one had been named, shall be discharged and the said son, having become a general partner, shall also act in said Trustee's or designee's place with the same rights and obligations of the trust herein set forth.

\*     \*     \*     \*     \*     \*     \*

EIGHTEENTH: In the event that this partnership is not extended upon the termination of the time fixed for the continuance of said partnership or in the event of a dissolution of said partnership hereunder, a notice of dissolution, as required by statute in such case made and provided, shall be filed and published.

TWENTIETH: The limited partners in the partnership hereby warrant and represent that each of them is a professional engineer licensed to practice professional engineering under the laws of the State of New York \* \* \*

\*     \*     \*     \*     \*     \*     \*

IN WITNESS WHEREOF, the parties have hereunto set their hands and seals the day and year first above written.

In the presence of:

[unreadable]

(S)   GUY B. PANERO
(S)   ALBERT M. LAUKAITIS
(S)   FRITZ KINDLER
(S)   ARTHUR W. B. REINHARD

Guy B. Panero Engineers filed its partnership returns on a calendar year basis.

Guy died on May 14, 1961. The 1961 joint income tax return which covered Anna McCormick Panero's calendar year 1961 and Guy's short year ending on May 14, 1961, reflected a loss of $61,454.68 as Guy's distributive share of the loss of Guy B. Panero Engineers, and petitioners timely filed an application for tentative carryback adjustment to the year 1958. Refund pursuant to said application was paid and thereafter, on examination, such carryback loss was disallowed.

On January 1, 1962, Guy B. Panero Engineers entered into an agreement with Guy B. Panero, Inc., a New York corporation. Such agreement is reproduced in its entirety in the footnote.[2]

---

[2] Agreement made as of the 1st day of January, 1962, between Guy B. Panero Engineers, a limited partnership, represented by the Estate of Guy B. Panero, deceased sole general partner of said partnership (hereinafter the "Partnership"), and Guy B. Panero Inc., a New York Corporation (hereinafter the "Corporation") with offices located at 630 Third Avenue, New York City, New York.

WHEREAS Guy B. Panero, the sole general partner of the Partnership, died on May 14, 1961, leaving certain contracts for engineering services uncompleted, accounts receivable uncollected and accounts payable unpaid; and

WHEREAS the Estate of Guy B. Panero has succeeded to Guy B. Panero's interest in the firm of Guy B. Panero Engineers; and

WHEREAS the Partnership as presently constituted cannot continue to practice professional engineering under the laws of the State of New York; and

WHEREAS in any event the Partnership terminated as of December 31st, 1961, pursuant to Article Four of the original Agreement of Partnership dated February 10, 1955; and

WHEREAS the Partnership therefore desires to wind up its affairs and to provide for the payment of its creditors pursuant to Article Ten of the aforementioned Agreement of Partnership; and

WHEREAS the Corporation desires to acquire the jobs of the Partnership now in progress, in order to complete them at a profit; and

WHEREAS the Corporation is willing to act as agent to collect and pay over to the Partnership and/or its designees the aforementioned accounts receivable,

Now, THEREFORE, in consideration of the above and of the covenants set forth below, the Partnership and the Corporation agree as follows:

1. a) The Partnership hereby assigns to the Corporation all its rights and obligations under the uncompleted contracts listed in the schedule annexed hereto ("Schedule of Uncompleted Contracts of Guy B. Panero Engineers, as of December 31, 1961"), including all engineering drawings, sketches, calculations, estimates, job records and correspondence pertaining thereto, but not including any amounts billed on account of said contracts prior to the date of this agreement, and appearing on the books of account of the Partnership as accounts receivable, except as provided below.

b) The Partnership further agrees to advance from time to time monies to the Corporation so as to assist the Corporation in paying the expenses incurred in completing the original contracts.

2. The Corporation hereby accepts the above assignment by the Partnership, and agrees to complete the work to be performed according to the terms of said contracts whose obligations it assumes, except that the Corporation does not guarantee the correctness of work performed by the Partnership prior to this assignment, and shall not be responsible for said work; and the Corporation further agrees to pay to the Partnership, upon the completion of all the above-mentioned contracts, a sum equal to 45 per cent of the aggregate net profit from said contracts. In the event that the Corporation incurs an aggregate net loss on said contracts, it is agreed that the Partnership will not share in said loss.

3. "Aggregate net profit" is defined as the excess of total fees earned and received by the Corporation on the above-mentioned contracts, over its total cost to complete said contracts. Costs shall be recorded in a manner similar to the job cost accounting system used by the Partnership, and shall consist of the total of (a) direct technical salaries; (b) all other costs such as travel, reproductions, outside consulting fees, etc., which the

(Footnote continued on following page.)

The parties have stipulated that if the partnership terminated on May 14, 1961, or if the partnership's taxable year closed on such date, the net operating loss carryback should be allowed to petitioners;

Partnership had previously treated as direct job costs; and (c) overhead computed in accordance with accepted accounting principles. The Partnership shall have the right to audit the books and records of the Corporation with respect to the computation of the aggregate net profit on said contracts.

4. The Partnership appoints the Corporation as its agent to collect the accounts receivable due and owing to Guy B. Panero Engineers as of December 31, 1961. Collection shall be made in the name of the Partnership, or the Corporation; the Corporation is authorized to appoint sub-agents for the collection of said accounts receivable. All such collections, minus any costs of collection, shall be credited by the Corporation to the account of Guy B. Panero Engineers. Upon receiving from time to time instructions from the Partnership, the Corporation shall promptly pay to the Partnership and/or its designees such amounts as directed, but only to the extent of the accounts receivable so collected.

5. The request of a majority of the executors of the Estate of Guy B. Panero shall be sufficient to authorize the Corporation to pay the creditors of Guy B. Panero Engineers as directed, pursuant to Sec. 3 above.

6. The parties agree to execute all documents and to perform all acts which may be required to carry out the purposes of this agreement.

In witness thereof the parties hereto have set their hands and seals as of the date above mentioned.

GUY B. PANERO ENGINEERS.

By     THE ESTATE OF GUY B. PANERO,
     *deceased sole general partner*

By  (S)  Guy A. Panero
     GUY A. PANERO, *Executor*
     ROBERT B. PANERO, *Executor*

   (S)  Anna McCormick Panero
     ANNA McCORMICK PANERO, *Executrix*
     GUY B. PANERO INC.

By  (S)  Fritz Kindler
     FRITZ KINDLER, *President*

I, Robert C. Sussman, certify that I am the Secretary-Treasurer and Fritz Kindler is the President of Guy B. Panero Inc., that the above seal is the seal of the Corporation; that the above is the signature of Fritz Kindler; and that this instrument was signed and the seal affixed pursuant to the orders of the Board of Directors of said Corporation.

(S)  Robert C. Sussman
    ROBERT C. SUSSMAN

### JOBS IN PROCESS

Transferred from Guy B. Panero Engineers to Guy B. Panero Inc., January 1, 1962

| | |
|---|---|
| 5416 | American Surety Co. |
| 5850 | Andrews Air Force Base |
| 5901 | Baychester Houses |
| 6128 | Bellevue Hospital—Interim contract |
| 6107 | Blind Brook Sewage Treatment Plant |
| 5910 | Bronx House of Detention for Men |
| 5758 | Capitol East Extension |
| ACpp–386 | Capitol Power Plant—Changes and improvements |
| 5843 | Capitol Power Plant—Expansion of facilities |
| 6130 | Church of the Resurrection |
| 5643 | Cumberland Hospital |
| 6036 | Delhi Dining Unit |
| 5619 | Edgemore Houses |
| 6021 | U.S. Embassy—Montevideo, Uruguay |
| 5514 | Emergency Mobilization Hospital |
| 5924 | Esso Building—Paris |
| 6008 | 44 East 32nd Street Elevator Conversion |
| 5932 | Freeport Housing |
| 5941 | General Post Office, New York, N.Y. |
| 6004 | Junior High School No. 8 |
| 5938 | Junior High School No. 294 |

but if neither the partnership terminated nor its taxable year closed on May 14, 1961, that the petitioners' tax liability as determined in the notice of deficiency is correct.

OPINION

The respondent's position in disallowing the claimed carryback loss is that the partnership year did not terminate until after May 14, 1961, and therefore did not terminate with or within Guy's taxable year.

The petitioners' position is that on Guy's death the limited partnership ceased to have a licensed professional engineer as a general partner and could therefore no longer operate as a partnership under New York law, and that such fact caused the partnership to terminate and its taxable year to close on May 14, 1961.

Sections 701 and 702, I.R.C. 1954,[3] provide [4] that persons carrying on business as partners, rather than the partnership as such, are liable for the income tax in their individual capacities according to their respective distributive shares (both as to gains and as to losses) and section 706(a) provides [4] that such distributive shares shall be included (income or loss) for any taxable year of the partnership ending within or with the taxable year of the partner.

Section 706(c) provides [4] that except in the case of a termination of a partnership its taxable year shall not close as the result of the death of a partner; and section 708 provides [4] that an existing partnership shall be considered as continuing if it is not terminated and that it shall be considered as terminated only if "no part of any business, financial operation, or venture of the partnership continues to be carried on by any of its partners in a partnership."

Section 1.706-1(c)(1), Income Tax Regs., provides [4] that the closing of a partnership taxable year or a termination of a partnership for Federal income tax purposes is not necessarily governed by the "dissolution," "liquidation," etc., of a partnership under State or local law and section 1.706-1(c)(3)(i), Income Tax Regs., provides [4] that the death of a partner shall not close the partnership year but that

---

| | |
|---|---|
| 6007 | R. H. Macy Company—White Plains, N.Y. |
| 6047 | John Purroy Mitchel Houses |
| 5929 | National Naval Medical Center |
| 6118 | National Naval Medical Center—redesign Panero—Weidlinger—Salvadori, S.A. |
| 6022 | Parkway Hospital, Forest Hills, N.Y. |
| 5908 | Puerto Rico, joint venture 107 |
| 6029 | Rutgers University—Physics Bldg., Lecture Hall and Library |
| 6030 | Time and Life Building—Paris |
| 6114 | U.S. Merchant Marine Academy—Kings Point, N.Y. |
| 6119 | U.S. Naval Receiving Station, Washington, D.C. |
| 6012 | Westchester Community College—Engineering Building |
| 6044 | Westchester Community College—Student Center and Food Lab. |
| 6011 | Westminster School Chapel |

[3] All statutory references are to the Internal Revenue Code of 1954.

[4] In relevant part.

its taxable year shall continue both for the remaining partners and the decedent partner.

Petitioners' position is narrow. Petitioner specifically and affirmatively agrees that dissolution because of death does not close the partnership's taxable year for Federal income tax purposes but argues that it was the general rule under the 1939 Code as enunciated in *Guaranty Trust Co.* v. *Commissioner*, 303 U.S. 493, that the dissolution of a partnership did close its taxable year and that section 706 (c)(1), *supra*, changed this rule only as respects the four specifications therein, to-wit: (1) The death of a partner, (2) the entry of a new partner, (3) the liquidation of a partner's interest in the partnership, and (4) the sale or exchange of a partner's interest in the partnership.

Petitioner argues therefore, that although Guy B. Panero Engineers was not terminated or dissolved by Guy's death as such, that it was terminated and dissolved under section 62–3 of the New York Partnership Law which provides—

Dissolution is caused:

\*  \*  \*  \*  \*  \*  \*

3. By any event which makes it unlawful for the business of the partnership to be carried on or for the members to carry it on in partnership;

and that Guy's death left the partnership without a licensed engineer to act for it so that any subsequent partnership act was unlawful under the New York Education Law which prohibits all but duly licensed professional engineers from practicing or offering to practice professional engineering in that State.

We find petitioners' argument interesting but without substance. The New York Education Law has nothing to do with partnerships. By its very terms, it seeks only to safeguard the life, health, and property of New York citizens by prohibiting the practice of professional engineering or land surveying by laymen. The three limited partners of Guy B. Panero Engineers, who obviously carried on the partnership business in a large way (judging from the many "jobs in process" which were transferred to Guy B. Panero, Inc., on Jan. 1, 1962) were all "professional engineer[s] licensed to practice professional engineering under the laws of the State of New York."

Under section 96 of the New York Partnership Law the protection of a limited partner is that he "shall not become liable as a general partner unless, \* \* \* he takes part in the control of the business." The meaning of this section is interpreted for us in *Executive Hotel Associates* v. *Elm Hotel Corp.*, 41 Misc. 2d 354, 245 N.Y.S.2d 929, 932–933 (N.Y.C. Civ. Ct. 1964):

Glatstian now challenges the right of the limited partnership to bring on this summary proceeding for non-payment of rent, initially claiming that the Com-

mittee Chairman is not a proper party to sign a petition on behalf of the partnership.

The development of statutory law pertaining to limited partnerships began in this country in 1822 with the passage of Chap. 244 of Laws of New York. Our legislature was the first to recognize the use by the business and commercial world of this form of organization and thereafter many of our sister states patterned their acts after ours. (Partners and Limited Partners under the Uniform Acts. 36 Harvard Law Rev. 1016.)

The true character of the role of the limited partner was plainly set out in an early case:

"The limited partner is a partner as much as a general partner and there is nothing to prevent him even during the continuance of the partnership from taking an active part in its concerns, if he chooses to bring on himself, the statutory consequences of a liability as a general partner. The statute is for his protection if he will conform to it; *it is not any part of its policy to prevent him from acting as a general partner if he is willing to assume the liabilities that follow;* and if he is willing his partners have no ground of complaint nor the creditors of the firm, if he leave their rights unimpaired." Hogg v. Ellis, 8 How. Prac. 473, 474.

This same principle still remains in our present statute as set out in Sec. 96 of the Partnership Law.

"A limited partner shall not become liable as a general partner unless, in addition to the exercise of his rights and powers as a limited partner, he takes part in the control of the business." (See also Continental National Bank v. Strauss, 137 N.Y. 148, 32 N.E. 1066.)

In the face of the sudden flood of real estate syndications to the extent where the legislature found it necessary to pass regulating statutes, are the Courts to remain sterile and unavailing to provide relief in the face of manifest wrong? The law should and does possess the power of growth, and when required by circumstances challenging its forms, must tailor its procedures to meet developments in the business world outside.

■ But here we find support for the action of the Committee Chairman. If he chose to act as a general partner, and does so, he must accept the consequences. Having done so, the Court will not turn aside his effort and give countenance to blatant wrongdoing. The burdens of his choice are for him to bear. [Emphasis added.]

See also *Riviera Congress Associates* v. *Yassky*, 268 N.Y.S.2d 854; *Canandaigua First Nat. Bank* v. *Whitney*, 4 Lans. 34, affd. 53 N.Y. 627; and *Madison County Bank* v. *Gould*, 5 Hill 309.

In carrying on the business of Guy B. Panero Engineers after Guy's death the limited partners were not doing anything unlawful or illegal or against the peace and dignity of the State of New York. The engineering jobs which they were continuing were being continued by professional engineers licensed under the laws of the State of New York. They had probably surrendered whatever protections had been afforded them under New York's limited partnership's act (N.Y. Partnership Law, art. 8) and had become liable as general partners, but this is beside the point; nothing unlawful had been done.

Therefore, even if we were to assume that petitioners were correct in their analysis of section 706(c) to the effect that the 1939

Code general rule as to termination remained unchanged except as to the four specifications of the 1954 Code (which assumption we do not make), it still follows that petitioners' ingenious argument must fail.

Also, we observe that after Guy's death his personal representatives must have at least tacitly agreed to the carrying on and continuing of the partnership's business and affairs. The record is silent as to any protest having been made and the contract entered into with Guy B. Panero, Inc., on January 1, 1962, indicates conclusively that the business and affairs of the partnership had been carried on in large volume.

The parties have stipulated that no trustee or general partner was appointed to act for the partnership after Guy B. Panero's death but the above considerations lead us to the inevitable conclusion that Guy's personal representatives had, by their actions and lack of actions, made such a designation and appointment under paragraph FIFTEENTH A, of the articles of limited partnership under the phrase, "or designated by said Trustee or other legal representative of his estate." We therefore interpret the parties' stipulation as meaning that no trustee or general partner had been appointed by Guy or appointed formally. It follows that the provision of paragraph FIFTEENTH that "said partnership shall not thereby [by Guy's death] be dissolved, but, on the contrary, the partnership shall be continued" was operative, and this is another reason why Guy B. Panero Engineers did not terminate with Guy's death.

There is yet another reason why Guy B. Panero Engineers did not terminate with Guy's death. Federal and New York law both provide that on dissolution a partnership is not terminated but continues until the winding up of its affairs is completed. Sec. 1.708–1(b) (1) (iii) (a), Income Tax Regs., and N.Y. Partnership Law sec. 61. It is quite obvious that the affairs of Guy B. Panero Engineers were far from wound up on January 1, 1962. This further reason for holding that the partnership did not terminate nor its year close with Guy's death is not a departure from petitioners' narrow reasoning based upon unlawfulness or illegality for, obviously, a winding up of the partnership's affairs could have been conducted and concluded without any practice or offer to practice professional engineering. A winding up, by definition of terms, is the antithesis of a carrying on or a continuing. It does not require the services of a professional, licensed engineer to sell tangibles or intangibles or to distribute them in kind, having first satisfied obligations of creditors and complied with other requirements of the New York law. The evidence shows that this had not been done by January 1, 1962, and indeed indicates that no steps had been taken down that road.

Therefore, in accordance with the parties' stipulation, and having decided that the partnership did not terminate nor was its taxable year closed on May 14, 1961,

*Decision will be entered for the respondent.*